**Neil J. FARKAS, D.O.; Neil J. Farkas, D.O., P.C., Plaintiffs–Appellants,**

v.

**BLUE CROSS & BLUE SHIELD OF MICHIGAN; Secretary of Health and Human Services, Defendants–Appellees.**

No. 92–2377.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 28, 1994.

Decided May 24, 1994.

Andrew B. Wachler, Phyllis A. Avery (argued), Detroit, MI, Gordon S. Gold (briefed), Seyburn, Kahn, Ginn, Bess & Howard, Southfield, MI, for Neil J. Farkas, D.O., PC, and Neil J. Farkas, D.O.

Edward W. Fisher, Debra A. Spicer, Detroit, MI, for Blue Cross & Blue Shield of Michigan.

Peter A. Caplan, Asst. U.S. Atty., Detroit, MI (argued and briefed), for Secretary of Health and Human Services.

Before: JONES and BOGGS, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Neil J. Farkas, D.O. and Neil J. Farkas, D.O., P.C. ("Dr. Farkas") appeal the district court's dismissal of their claim against Blue Cross & Blue Shield of Michigan ("BCBSM") and the intervenor, the Secretary of Health and Human Services ("the Secretary"), arising from Dr. Farkas' being placed under Medicare Prepayment Utilization Review ("PPUR"). The district court also vacated the Temporary Restraining Order ("TRO") that it had previously granted to prevent BCBSM from implementing PPUR for Dr. Farkas' Medicare claims. We **AFFIRM** both of the district court's rulings.

## I.

Dr. Farkas filed on 21 December 1991 a two-count complaint in Wayne County (Michigan) Circuit Court against BCBSM, claiming (1) tortious interference with business relationship and business expectancy and (2) intentional infliction of emotional distress, both resulting from various billing and directory-listing errors committed by BCBSM, the Medicare insurance carrier for the State of Michigan. *Farkas v. BCBSM*, 803 F.Supp. 87, 88 (E.D.Mich.1992). Soon thereafter, Dr. Farkas received from BCBSM a letter, dated 7 January 1992, informing him that he was being placed under PPUR[1] due to "numerous problems" relating to five patients' medical records previously obtained from Dr.

Farkas by BCBSM in connection with a standard postpayment audit that it conducted in July 1990.

Dr. Farkas then applied for and received from Wayne County Circuit Court a TRO to prevent BCBSM from implementing the proposed PPUR. Dr. Farkas alleged in his Motion for TRO—which has been treated by the parties, after removal to district court, as a substitute for an amended complaint—that he was placed under PPUR in retaliation for his having filed suit against BCBSM in state court.[2] The Secretary then intervened and removed Dr. Farkas' case to federal district court. The district court initially granted an extension of the TRO against BCBSM. Upon motion by Dr. Farkas, the state law claims against BCBSM were remanded to state court, but the "post-Complaint PPUR claim" was severed from those claims and remained in federal court. *Farkas*, 803 F.Supp. at 89. The Secretary then moved for dismissal of this federal cause of action for lack of subject matter jurisdiction, which the district court granted, at the same time vacating the TRO against BCBSM.

■ There is but a single issue before us here: Did the district court have jurisdiction over Dr. Farkas' PPUR claim, when he had neither presented his claim to the Secretary nor exhausted the administrative remedies available to him prior to seeking judicial review?

## II.

In reviewing a district court's dismissal of a plaintiff's complaint for lack of subject mat-

---

1. Medicare insurance carriers conduct either postpayment audits or prepayment reviews of the claims from their service providers. According to the Medicare Carrier's Manual:

   "The primary goal of prepayment utilization screening is to ensure that Medicare pays only for medically necessary services.... Prepayment controls ... [allow the carrier to better monitor] services provided by problem providers before a claim is processed."

   *Farkas*, 803 F.Supp. at 91. The use of PPUR finds statutory support at 42 U.S.C. § 1395*l* (e), which provides that "[n]o payment shall be made to any provider of services ... unless there has

been furnished such information as may be necessary in order to determine the amounts due such provider...."

2. On appeal, however, he broadened his attack, without objection from the appellees, to include the contention that the PPUR program under its existing implementation is unconstitutional and that, in any event, it was unconstitutional to apply it to him under these circumstances. We herein determine that the decision by the district court must be affirmed regardless of the precise nature of Dr. Farkas' claim.

ter jurisdiction, we must assume all material facts alleged by that plaintiff to be true and construe his complaint liberally, giving him "the benefit of any doubt." *Westchester Management Corp. v. HHS,* 948 F.2d 279, 279 (6th Cir.1991) (internal quotation marks omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992). The "accepted rule" is that dismissal is warranted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" in federal district court. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## III.

### A. The Medicare Act

Medicare claims are divided into two parts by the Medicare Act, 42 U.S.C. §§ 1395–1395ccc (1988). "Part A" claims involve hospitalization coverage, while "Part B" claims are for physicians' services and related medical needs. The Secretary administers both parts; she is authorized to assign to private insurance carriers, such as BCBSM, the task of paying Part B claims from the Federal Supplementary Insurance Trust Fund ("Medicare Trust Fund"). *See* 42 U.S.C. § 1395u; *Isaacs v. Bowen,* 865 F.2d 468, 470 (2d Cir.1989). The Secretary has issued regulations pursuant to the Medicare Act, *see generally* 42 C.F.R. §§ 405.301–405.2472 (1992), that authorize these Medicare carriers to audit provider records to ensure that services for which reimbursement is claimed are "medically necessary," "reasonable," and otherwise payable under Part B, *Isaacs,* 865 F.2d at 470, and to "safeguard[ ] against unnecessary utilization of services furnished by providers to Medicare beneficiaries." *Farkas,* 803 F.Supp. at 90. Most Part B claims are assigned by the ultimate Medicare beneficiaries (e.g., elderly patients) to their service providers (e.g., Dr. Farkas), who are paid by Medicare insurance carriers (e.g., BCBSM) pursuant to an agreement that the provider will accept the Medicare reasonable-charge determination as payment in full. *Id.* at 90 n. 3.

The Medicare Act has provided, since its effective date, for a "fair hearing" by the insurance carrier for disputes over Part B claims that surpass the amount in controversy threshold, when such claims "are denied or are not acted upon with reasonable promptness" or when the amount due is in dispute. 42 U.S.C. § 1395u(b)(3)(C); *see also* 42 C.F.R. § 405.801(a). The Medicare Act has also incorporated, since its effective date, via 42 U.S.C. § 1395ii, the exclusive judicial review provision of the Social Security Act, 42 U.S.C. § 405(h) (1988), which prohibits an action in federal court concerning any "claim arising under" that Act when such action is brought against "the United States, the Secretary, or any officer or employee thereof" under the grant of federal jurisdiction provided in either 28 U.S.C. § 1331 ("Federal question") or 28 U.S.C. § 1346 ("United States as defendant"). Judicial review of Medicare claims, pursuant to § 405, is only available as "herein provided"—i.e., after a final decision by the Secretary[3] on a claim arising under a provision of the Medicare Act itself.

Although the Medicare Act has provided, since its effective date, for judicial review of Part A benefit claims, until 1987 it allowed no review of Part B "amount determination" claims beyond the Medicare carrier's own fair hearing. The Supreme Court so held in 1982 when it decided that claims concerning amount determinations under Part B were not subject to judicial review in the federal courts. The Court based its decision upon the language and legislative history of 42 U.S.C. § 1395ff(b)(1),[4] which did not at that time provide for judicial review of Part B claims. *United States v. Erika, Inc.,* 456

---

**3.** 42 U.S.C. § 405(g) (1988) provides judicial review for "[a]ny individual, after any *final decision* of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy." (Emphasis added).

**4.** 42 U.S.C. § 1395ff(b)(1) (1982) provided, prior to its 1986 amendment, for "judicial review of the Secretary's final decision after such hearing as is provided in section 405(g)" for:

Any individual dissatisfied with any determination under subsection (a) of this section as to—
... (C) the amount of benefits *under part A* of this subchapter (including a determination where such amount is determined to be zero). (Emphasis added).

U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982). Later, however, the Court determined that federal-question jurisdiction existed to review "substantial statutory and constitutional challenges to the Secretary's administration of Part B of the Medicare program." *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 680, 106 S.Ct. 2133, 2141, 90 L.Ed.2d 623 (1986). In so doing, it distinguished "amount determinations," for which there remained no judicial review for Part B claims, from determinations of "the *method* by which such amounts are determined" (now known as "methodology determinations"), *id.* at 680 n. 11, 106 S.Ct. at 2141 n. 11, to which the "strong presumption that Congress intends judicial review of administrative action" opened the federal courts, despite the Medicare Act's failure to provide for judicial review of Part B claims. *Id.* at 670, 106 S.Ct. at 2135. Shortly thereafter, however, in the Omnibus Budget Reconciliation Act of 1986 ("OBRA"), Congress amended § 1395ff(b)(1) so as to provide for judicial review of Part B amount determinations that meet the amount in controversy threshold and that concern services provided after 1 January 1987.[5] *See, e.g., Farkas,* 803 F.Supp. at 91.

## B. The Supreme Court

■ The issue before us, then, is whether the holding in *Michigan Academy* authorizes federal question jurisdiction over Dr. Farkas' claim under 28 U.S.C. § 1331 or whether instead Dr. Farkas is bound by the requirement of 42 U.S.C. § 405(g) that judicial review is available only "after [a] final decision of the Secretary made after a hearing to which he was a party." There are four Supreme Court cases that bear directly upon the outcome here.

### (a) Weinberger v. Salfi

Respondents in *Salfi* sought to challenge in a class action certain provisions of the Social Security Act that they claimed were unconstitutional. *Weinberger v. Salfi,* 422 U.S. 749, 755, 95 S.Ct. 2457, 2462, 45 L.Ed.2d 522 (1975). The Court held that because "the Social Security Act ... provides both the standing and the substantive basis" for respondents' constitutional claims, "§ 405(h) precludes resort to federal-question jurisdiction for the adjudication" of these claims, despite their constitutional basis. *Id.* at 760–61, 95 S.Ct. at 2464–65. Such claims are not barred from the federal courts; they must, however, "be brought under jurisdictional grants contained in the Act," *id.* at 762, 95 S.Ct. at 2465, i.e., in conformity with the "final decision" requirement of § 405(g). This requirement consists of two elements: (1) "presentment"—a nonwaivable, jurisdictional prerequisite that a claim for benefits shall have been presented to the Secretary, and (2) "exhaustion"—a waivable prerequisite that a claimant fully pursue all administrative remedies prescribed by the Secretary prior to seeking judicial review. *See Bowen v. City of New York,* 476 U.S. 467, 482–83, 106 S.Ct. 2022, 2031–32, 90 L.Ed.2d 462 (1986) (citing *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); and *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)); *see also Abbey v. Sullivan,* 978 F.2d 37, 43 (2d Cir.1992). On this basis, the Court dismissed from the suit for lack of subject matter jurisdiction the constitutional claims of all respondents who had failed to allege "that they have even filed an application with the Secretary, much less that he has rendered any decision, final or otherwise, review of which is sought." *Salfi,* 422 U.S. at 764, 95 S.Ct. at 2466.

### (b) United States v. Erika

As discussed above, the specific grant of federal jurisdiction within the Medicare Act is contained in 42 U.S.C. § 1395ff. In *United States v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), the claimant sought judicial review of its Medicare carri-

---

5. 42 U.S.C. § 1395ff(b)(1)(C) was amended to provide judicial review for challenges to the determination of "the amount of benefits under part A *or part* B of this subchapter." (Emphasis added). *See supra* n. 4 (containing the pre-

amendment version of this subsection). 42 U.S.C. § 1395ff(b)(2)(B) provides an amount in controversy threshold of $500 for administrative review and of $1000 for judicial review of Part B claims.

er's refusal to adjust the "reasonable charges" payable to that claimant under Part B, alleging violations of the Fifth Amendment and of the Social Security Act and its associated regulations. *Erika*, 456 U.S. at 205, 102 S.Ct. at 1653. The Court examined the language of § 1395ff and its legislative history and concluded that "[c]onspicuously, the statute fails to authorize further review [beyond the carrier's own fair hearing] for determinations of the amount of Part B awards." *Id.* at 208, 102 S.Ct. at 1654.

### (c) Heckler v. Ringer

*Ringer* involved a challenge by potential Medicare beneficiaries to a policy decision by the Secretary that certain Medicare Part A claims (for a surgical procedure known as bilateral carotid body resection ("BCBR")) would no longer be reimbursed by the Medicare Trust Fund. *Heckler v. Ringer*, 466 U.S. 602, 614, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984). Three claimants in the case had already undergone the BCBR surgery, but the Court held that their failure to exhaust administrative remedies, absent a compelling reason for judicial waiver of the exhaustion requirement in their circumstances, meant that their federal causes of action were premature. *Id.* at 618–19, 104 S.Ct. at 2023–24. A fourth respondent, Ringer, had yet to undergo the surgery. He sought (1) declaratory relief to the effect that the new policy of the Secretary regarding BCBR surgery was illegal under the Medicare Act and (2) an injunction ordering the Secretary to instruct the Medicare intermediaries to pay all BCBR claims. *Id.* at 611, 104 S.Ct. at 2019–20.

The Court viewed Ringer's claim "as essentially one requesting the payment of benefits for BCBR surgery, a claim cognizable only under § 405(g)." *Id.* at 620, 104 S.Ct. at 2024. Federal-question jurisdiction, the Court held, was unavailable to Ringer and his fellow claimants, since all aspects of their claims "arose under" the Medicare Act, "in that the Medicare Act provides both the substance and the standing for [their] claim[s]." *Id.* (citing *Salfi*, 422 U.S. at 760–61, 95 S.Ct. at 2464–65). The Court rejected the argument that because Ringer had no "claim" to present to the Secretary (not as yet having had the BCBR surgery), he also had no claim "arising under" the Medicare Act and thus was exempt from "§ 405(h)'s bar to federal-question jurisdiction." *Id.* at 621, 104 S.Ct. at 2025. Ringer was required instead to "pursue his claim under [§ 405(g)] in the manner which Congress has provided," and since he had not given the Secretary "an opportunity to rule on a concrete claim for reimbursement," he had not satisfied the nonwaivable presentment requirement of § 405(g). *Id.* at 622, 104 S.Ct. at 2025–26. The Court reached this conclusion even though it would have been impossible at the time Ringer filed his lawsuit for him to have filed a claim pursuant to § 405(g), since prior to actually undergoing the BCBR surgery he had no reimbursable Part A claim. The Court found that all respondents' claims were "inextricably intertwined" with what in essence was a claim for benefits, *id.* at 624, 104 S.Ct. at 2026, concluding that "Congress must have felt that cases of individual hardship resulting from delays in the administrative process had to be balanced against the potential for overly casual or premature judicial intervention in [the] administrative system." *Id.* at 627, 104 S.Ct. at 2028.

The *Ringer* Court also noted the possibility that the *exhaustion* prong of the § 405(g) requirements might be waived under certain limited circumstances, including those in which "respondents ... raise a claim that is wholly 'collateral' to their claim for benefits." *Id.* at 618, 104 S.Ct. at 2023. This does not apply to the *presentment* requirement, however, which is nonwaivable and must be satisfied for every claim arising under the Medicare Act. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976) ("The nonwaivable element [for jurisdiction under § 405(g)] is the requirement that a claim for benefits shall have been presented to the Secretary.")

### (d) Bowen v. Michigan Academy of Family Physicians

In *Michigan Academy*, respondents brought a constitutional challenge to the validity of a Medicare regulation. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 668, 106 S.Ct. 2133, 2135, 90

L.Ed.2d 623 (1986). The Court began with the "strong presumption" in favor of judicial review of administrative action, *id.* at 670, 106 S.Ct. at 2135, which presumption can be overcome by "specific language" indicating Congressional intent, *id.* at 673, 106 S.Ct. at 2137 (internal quotation marks omitted), or even by "inferences of intent drawn from the statutory scheme as a whole." *Id.* at 673 n. 4, 106 S.Ct. at 2137 n. 4. The scheme of the Medicare Act, prior to the OBRA amendments, precluded judicial review of Part B "amount determinations." *See Erika,* 456 U.S. at 208, 102 S.Ct. at 1654. The Court held, however, that this scheme did not preclude review of attacks upon the "validity of a regulation," *Michigan Academy,* 476 U.S. at 676, 106 S.Ct. at 2139, which the Court characterized as a challenge to the *"method by which ... amounts are determined." Id.* at 680 n. 11, 106 S.Ct. at 2141 n. 11. The Court thus concluded that the Congressional preclusion of judicial review for Part B claims applied only to amount determinations, and not to "matters which Congress did *not* delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations, [which] are cognizable in courts of law." *Id.* at 680, 106 S.Ct. at 2141. It also noted that the exhaustion requirement could not apply to respondents because "there is no hearing, and thus no administrative remedy, to exhaust." *Id.* at 679 n. 8, 106 S.Ct. at 2140 n. 8.

### C. The District Court Opinion

The district court first considered Dr. Farkas' complaint in light of *Michigan Academy,* relying upon the distinction between amount and methodology determinations, as analyzed in *Kuritzky v. Blue Shield of Western New York,* 850 F.2d 126, 128 (2d Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989): " 'Method' does not mean the carrier's method of applying the regulations [which would be an amount determination] ...; rather, it means the method set forth in the Secretary's regulatory scheme that prescribes how the carriers are to calculate benefits." *See also Association*

*of Seat Lift Mfrs. v. Bowen,* 858 F.2d 308 (6th Cir.1988), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989) (holding that plaintiffs' "pre-amendment claims" (i.e., claims for services rendered prior to the effective date of the OBRA amendments), challenging their insurance carrier's application of the "inherent reasonableness" criterion used to determine the proper charge for plaintiffs' services, were in fact challenges to a carrier's amount determinations and were therefore not amenable to judicial review). The district court considered Dr. Farkas' challenge to his PPUR status not to be a "methodology" claim as set forth in *Michigan Academy,* because "Dr. Farkas admits that he is not challenging the constitutionality or validity of the Medicare rules authorizing PPUR review." [6] *Farkas,* 803 F.Supp. at 93. The court concluded that Dr. Farkas therefore "has not made out a judicially reviewable *Michigan Academy* 'method' challenge." *Id.*

As an alternative ground for dismissing Dr. Farkas' complaint, the district court held that "the amount/methodology dichotomy is no longer relevant, and *Michigan Academy* is of no continuing precedential value." *Id.* at 94 (citing *National Kidney Patients Ass'n v. Sullivan,* 958 F.2d 1127, 1132–34 (D.C.Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993)). The court in *National Kidney* concluded that the OBRA amendments had destroyed the previous distinction between the treatment of Part A claims, following the *Salfi-Ringer* line of cases, and the treatment of Part B claims, following *Michigan Academy.* 958 F.2d at 1132. Since judicial review was now available for Part B amount determinations, thus eliminating the justification for distinguishing in § 1395ff(b)(1) between Part A and Part B claims for purposes of 42 U.S.C. § 405(g), and since Part A claims had always required presentment and exhaustion per § 405(g) as prerequisites to judicial review, the *National Kidney* court ruled that Part B methodology disputes "are [now] fed through the administrative-judicial system as parts of disputes

---

**6.** As indicated *supra* at n. 2, Dr. Farkas has on appeal broadened his attack to include a constitutional basis for his claim.

over actual amounts." 958 F.2d at 1134. The district court held that if Dr. Farkas wishes to challenge BCBSM's decision to subject him to PPUR, he must do so in conjunction with a challenge to the denial or underpayment of a Part B claim or to any unreasonable delay in the reimbursement of such a claim, and he must comply with the dual requirements of § 405(g) in doing so. *Farkas,* 803 F.Supp. at 96 n. 12. Dr. Farkas cites cases to support the proposition that *Michigan Academy* is still good law, but the district court noted that these cases all involved preamendment Part B claims, to which *Michigan Academy* still applied because judicial review of amount determinations was not available for such claims. We agree that these cases can therefore provide no guidance in adjudicating the claim before us here.

### IV.

Dr. Farkas argues that *Michigan Academy* is still good law, even after the 1986 amendment to the Medicare Act, and that it controls the outcome of his appeal. He contends that even though judicial review of Part B amount determinations is now available, after the presentment and exhaustion requirements of 42 U.S.C. § 405(g) have been satisfied, his claim here is one challenging the *methodology* of Part B determinations, for which *Michigan Academy* still provides direct federal-question jurisdiction. He characterizes his claim as one "challenging the regulation that gives the Secretary the unbridled discretion to place him on PPUR on arbitrary and capricious grounds.... This is not an amount dispute but one over the methodology used by the Secretary to place providers on PPUR." He considers PPUR to be "a severe form of *punishment*" that "consistently results in denied claims which necessitate 'amount' hearings." He argues that he has a constitutional challenge in that the Secretary placed him under PPUR "solely [out] of vindictiveness," in retaliation for his lawsuit against BCBSM, which "sanction is extremely repugnant to basic due process requirements."

Dr. Farkas reasons that there is no conflict between *Michigan Academy* and *Ringer* be-cause the latter was not a "methods" case, as asserted by the court in *National Kidney,* but rather an amount determination case, thus leaving open the possibility that *Michigan Academy* survives the 1986 amendment to § 1395ff and applies to methodology claims under both Parts A and B. It is incorrect, however, to distinguish *Ringer* and *Michigan Academy* on this basis, since both cases involved challenges to policy determinations of the Secretary.

Dr. Farkas cites our holding in *Westchester* to support the proposition that the reasoning of *Michigan Academy* now applies to methodology challenges to *Part A* regulations, and not just to such challenges to Part B regulations. His argument thus accepts the premise that Part A and Part B claims must be treated identically after the 1986 amendments. *See National Kidney,* 958 F.2d at 1132 ("There is, indeed, no difference in the statutory provisions governing judicial review of parts A and B ...."); *see also Abbey,* 978 F.2d at 43 ("Part B claims are now reviewed in the same manner as Part A claims[,] so that the Social Security Act provides the exclusive jurisdiction over Part B disputes."). He concludes from this, however, *not* that the amount/methodology distinction is no longer viable, but rather that it now applies to all Medicare claims—both Part B *and* Part A.

A study of *Westchester* reveals, however, that "the *Michigan Academy* exception applies only when there is no other avenue of judicial review" available to a plaintiff. 948 F.2d at 282. Part A claims have always had their own "avenue of judicial review," making unavailable to them the application of the *Michigan Academy* rationale for federal-question jurisdiction. Because Westchester Management's claim failed to meet the amount in controversy threshold for judicial review, as provided in § 1395oo(f)(1) of the Medicare Act, we declined to grant plaintiff's request for federal-question jurisdiction. *Id.* at 283. We agreed with the government's assertion that "when Congress expressly creates a forum for judicial review of agency action ... claimants must meet all of the requirements that Congress imposes for access to that forum." *Id.* at 282. When a

claim "arises under" and is amenable to judicial review under the Medicare Act, "42 U.S.C. § 405(h) precludes subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1346." *Id.*

Dr. Farkas argues that waiver of the exhaustion requirement for review of administrative action applies to the circumstances of his claim. This argument, however, misses the point that *presentment* of a claim to the Secretary is a nonwaivable requirement for judicial review under § 405(g). If Dr. Farkas must meet the twin prerequisites of § 405(g), then whether exhaustion might be waived is immaterial here, since he has failed to meet the presentment requirement. If Dr. Farkas can bypass § 405(g), which we hold he cannot, exhaustion again is not an issue, because the exhaustion of administrative remedies is not a prerequisite to federal-question jurisdiction in the federal courts.

Finally, Dr. Farkas argues that the federal courts have jurisdiction over his claim under the Administrative Procedures Act ("the APA"), 5 U.S.C. § 702 (1988). The Supreme Court, however, rejected a similar argument in *Ringer,* relying upon *Salfi:*

> Ringer's claim may well "aris[e] under" the APA in the same sense that Salfi's claim arose under the Constitution, but we held in *Salfi* that the constitutional claim was nonetheless barred by § 405(h). It would be anomalous indeed for this Court ... to give greater solicitude to an APA claim than the Court thought the statute allowed it to give to the *constitutional* claim in *Salfi.*

*Ringer,* 466 U.S. at 622, 104 S.Ct. at 2025. Dr. Farkas' argument for jurisdiction under the APA, therefore, is without merit.

### V.

We reject Dr. Farkas' argument that the amount/methodology distinction of *Michigan Academy* is still good law; the OBRA amendments to the Medicare Act have deprived *Michigan Academy* of lasting precedential value. The *National Kidney* court, considering a post-amendment challenge to a Part B regulation that clearly fell into the "methodology" category, held that all claims under Medicare Part B are now to be treated in the same manner as Medicare Part A and Social Security claims. Because "persons affected by an adverse decision of a[n insurance] *carrier* may now obtain review *by the Secretary,*" *National Kidney,* 958 F.2d at 1133, the *Salfi-Eldridge-Ringer* line of cases requires that such a person adhere to the dual requirements of 42 U.S.C. § 405(g) before seeking judicial review.

Since claims under Medicare Parts A and B are now to be treated in identical fashion, a holding that a party may bring a methodology claim under Part B directly to federal district court, without having first presented a claim to the Secretary for a final decision, would mean that we would have to grant federal-question jurisdiction to a methodology claim under Part A of Medicare as well. This would in effect be a holding that *Michigan Academy* overrules the entire line of Supreme Court cases that has denied direct federal-question jurisdiction to claims under Part A. *See National Kidney,* 958 F.2d at 1132. This is a step, understandably, that we are not willing to take. We therefore will no longer apply the amount/methodology distinction to claims brought under Part B of the Medicare Act as a means of providing federal-question jurisdiction for such claims.[7]

Our decision here, of course, does not permanently close the federal courts to Dr. Farkas' PPUR claim. Dr. Farkas may challenge BCBSM's PPUR decision in conjunction with a claim for any payments denied by BCBSM because of his failure to comply with the PPUR requirements. If and when BCBSM rejects such a challenge to its PPUR decision and fails to pay his claims because he did not comply with PPUR, Dr. Farkas may then seek review of that decision via the appeals process available within the Department of Health and Human Services and ultimately from the federal courts. If the district court then rules that the decision to place Dr.

---

7. Because we so hold, we need not consider the first ground presented by the district court for its decision, namely, that Dr. Farkas did not in fact bring a "methodology" claim against BCBSM and the Secretary.

Farkas under PPUR was improper, it can issue the appropriate relief.

## VI.

For the reasons stated above, namely, that Dr. Farkas' challenge to his PPUR status arises under the Medicare Act and is amenable to judicial review only after the § 405(g) dual requirements of presentment and exhaustion have been satisfied, we **AFFIRM** the decision of the district court dismissing plaintiff's claim for lack of subject matter jurisdiction and dissolving the TRO against BCBSM.