RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0298P (6th Cir.)
File Name: 00a0298p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CATHEDRAL ROCK OF NORTH
COLLEGE HILL, INC., d/b/a
BEECHKNOLL CONVALESCENT
CENTER,
      *Plaintiff-Appellant,*

      *v.*

DONNA E. SHALALA,
Secretary of Health and
Human Services,
      *Defendant-Appellee.*

No. 99-4149

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 99-00552—Herman J. Weber, District Judge.

Submitted: May 5, 2000

Decided and Filed: September 5, 2000

Before: BATCHELDER, MOORE, and BEEZER,[*] Circuit
Judges.

_____

[*] The Honorable Robert R. Beezer, Circuit Judge of the United States
Court of Appeals for the Ninth Circuit, sitting by designation.

1

———————————

**COUNSEL**

**ON BRIEF:** Geoffrey E. Webster, J. Randall Richards, Columbus, Ohio, for Appellant. Ted Yasuda, UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, OFFICE OF THE GENERAL COUNSEL, REGION V, Chicago, Illinois, for Appellee.

MOORE, J., delivered the opinion of the court, in which BEEZER, J., joined. BATCHELDER, J. (pp. 22-23), delivered a separate opinion concurring in the judgment.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Cathedral Rock of North College Hill, Inc. d/b/a Beechknoll Convalescent Center ("Beechknoll")[1] is a nursing facility appealing the dismissal of its complaint for lack of subject matter jurisdiction. In its complaint, Beechknoll challenges a determination of the Secretary of Health and Human Services that it is not in substantial compliance with the Medicare and Medicaid regulations and terminating its participation in the programs. Although Beechknoll did not exhaust its administrative remedies before seeking judicial review as required under the Medicare Act, it contends that it falls under an exception to this requirement established in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), and also under an exception for claims that are "entirely collateral" to a substantive challenge of the Secretary's determination. Alternatively, Beechknoll asserts that the district court had jurisdiction under the Medicaid Act.

———————————

[1]The appellant's briefs and joint appendix also mistakenly refer to appellant as Cathedral Rock of North College Hill, Inc. d/b/a Beechknoll Community Center.

*Illinois Council*, 120 S. Ct. at 1094 (citations omitted).

Here, Beechknoll did not request a hearing before HHS until July 20, 1999, *see* J.A. 356, that is, after it had already filed its motion for a temporary restraining order in the district court, *see* J.A. 23. Thus, Beechknoll failed to satisfy "the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court." *Illinois Council*, 120 S. Ct. at 1094. This failure deprived the district court of subject matter jurisdiction.

The majority nevertheless asserts that, "Like *Eldridge*, Beechknoll's second argument, that it is entitled to a pre-termination hearing under the Due Process Clause, involves Beechknoll's procedural constitutional rights and is 'entirely collateral' from its substantive challenge to the Secretary's termination decision." *Ante* at __. The majority makes this assertion without considering—as the *Eldridge* Court did—whether the plaintiff satisfied the nonwaivable jurisdictional element under § 405(g). In so doing, the majority apparently means to suggest that the "nonwaivable and nonexcusable" requirement that an individual present a claim to the agency before raising it in court is in fact both waivable and excusable in cases in which the individual seeks preliminary injunctive relief.

Nothing in the Supreme Court's cases supports this rather counterintuitive formulation. Indeed, *Illinois Council* makes clear that the jurisdictional bar is both uncomplicated and encompassing. ". . . Congress may well have concluded that a universal obligation to present a legal claim first to HHS, though postponing review in some cases, would produce speedier, as well as better review overall. And this Court crossed the relevant bridge long ago when it held that Congress, in both the Social Security Act and the Medicare Act, insisted upon an initial presentation of the matter to the agency." *Illinois Council*, 120 S. Ct. at 1097. In view of this language, I cannot join in the majority's stealthy attempt to carve off a class of cases in which initial presentation of a claim to the agency is not required.

---

**CONCURRENCE**

---

ALICE M. BATCHELDER, Circuit Judge, concurring in the judgment. I concur in the majority's disposition of this case. I do not concur, however, in the majority's discussion of the "entirely collateral" exception. To the extent that this exception survives the Supreme Court's recent pronouncements in *Shalala v. Illinois Council on Long Term Care, Inc.*, 120 S. Ct. 1084 (2000), it is clear that it would apply only when a litigant satisfies a "nonwaivable and nonexcusable requirement" of initial presentation of its claim to the appropriate agency. Beechknoll did not satisfy this requirement in this case. That is the end of the matter.

In *Illinois Council*, the Supreme Court stated that two of its earlier cases, *Weinberger v. Salfi*, 422 U.S. 749 (1975), and *Heckler v. Ringer*, 466 U.S. 602 (1984), "foreclose distinctions based upon . . . the 'collateral' versus 'non-collateral' nature of the issues . . . ." *Illinois Council*, 120 S. Ct. at 1094. When the plaintiff in *Illinois Council* attempted to distinguish those cases on the basis of *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court remarked:

*Eldridge*, however, is a case in which the Court found that the respondent had followed the special review procedures set forth in § 405(g), thereby complying with, rather than disregarding, the strictures of § 405(h). The Court characterized the constitutional issue the respondent raised as "collateral" to his claim for benefits, but it did so as a basis for requiring the agency to excuse, where the agency would not do so on its own, some (but not all) of the procedural steps set forth in § 405(g). The Court nonetheless held that § 405(g) contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court. The Council has not done so here, and thus cannot establish jurisdiction under § 405(g).

We **AFFIRM** the dismissal of Beechknoll's complaint for lack of subject matter jurisdiction because neither of the alleged exceptions to the Medicare Act's exhaustion requirement applies in this case. In addition, Beechknoll cannot avoid this requirement by characterizing its claims as arising under the Medicaid Act when it is a dual provider subject to common certification, termination, and appeals procedures under the Medicare and Medicaid regulations.

## I. FACTS AND PROCEDURE

Beechknoll is a 100-bed nursing facility located in Cincinnati, Ohio, that was certified to participate in both Medicare and Medicaid programs. The Ohio Department of Health (ODH) conducted several surveys of Beechknoll, which showed that it was not in substantial compliance with the federal Medicare and Medicaid certification and quality of care requirements. The Secretary of Health and Human Services then adopted the ODH's recommendations and imposed the following remedies against Beechknoll: (1) denial of payment for new Medicare admissions effective June 25, 1999; (2) a civil monetary penalty; and (3) termination of Beechknoll's participation in the Medicare and Medicaid programs effective July 19, 1999.

On July 19, 1999, Beechknoll filed a complaint for declaratory and injunctive relief in federal district court against the Secretary. Beechknoll alleges that the Secretary's remedies violate the Medicare Act, 42 U.S.C. § 1395i-3(h)(2); the Medicaid Act, 42 U.S.C. § 1396(h)(3); the Due Process Clause of the Fifth Amendment; the Administrative Procedure Act, 5 U.S.C. §§ 553 et seq. and 706; and that they are contrary to law, arbitrary, capricious, and an abuse of discretion in violation 5 U.S.C. § 706(2). Beechknoll seeks a declaration that these remedies are in violation of the law and a permanent injunction to prevent the Secretary from "(a) terminating Plaintiff's Medicare and Medicaid provider agreements and certification for and participation in the Medicare and Medicaid Program effective July 19, 1999, and (b) terminating or refusing to make payment to Plaintiff for

covered services rendered to Medicare and Medicaid eligible residents who now reside at Beechknoll, pending the outcome of an administrative hearing." J.A. at 10 (Complaint). In response, the Secretary filed a motion to dismiss for lack of subject matter jurisdiction because Beechknoll failed to exhaust its administrative remedies before seeking relief in federal district court.

On the same date, Beechknoll also filed a motion for a temporary restraining order asking the district court to restrain temporarily the Secretary from terminating its Medicare and Medicaid provider agreements and from refusing to make payment to Beechknoll for covered services rendered to its current Medicare and Medicaid patients, pending the outcome of an administrative hearing. The Secretary filed a memorandum in response to Beechknoll's motion arguing that Beechknoll failed to show a strong likelihood of success on the merits or any of the other requirements for injunctive relief.

Beechknoll filed a formal request for an administrative hearing on July 20, 1999.

The district court entered an order issuing a temporary restraining order for ten days for the purpose of preserving the status quo pending its decision on whether subject matter jurisdiction exists. Within this period, the court held a hearing on the Secretary's motion to dismiss and concluded that it lacked subject matter jurisdiction to review Beechknoll's claims because the nursing facility had failed to exhaust its administrative remedies. After the district court entered judgment dismissing Beechknoll's complaint without prejudice, Beechknoll filed a timely notice of appeal.

## II. ANALYSIS

### A.  Standard of Review

A district court's legal determinations in dismissing a complaint for lack of subject matter jurisdiction are reviewed de novo, while any factual findings are reviewed for clear

adopted by the [Medicaid Act] and the provider, as will usually be the case, furnishes services under both Titles.'" *Id.* at 503 (quoting *Rhode Island Hosp. v. Califano*, 585 F.2d 1153, 1162 (1st Cir. 1978)). Accordingly, Beechknoll cannot avoid the Medicare Act's administrative channeling requirement simply because as a dual Medicare and Medicaid provider, its claims also fall under Medicaid Act.[7]

Therefore, we hold that the district court did not have jurisdiction to consider Beechknoll's claims under the Medicaid Act.

### III.  CONCLUSION

Based on the foregoing reasons, we **AFFIRM** the district court's dismissal of Beechknoll's claim for lack of subject matter jurisdiction.

---

[7]We need not decide the jurisdictional basis of a case that presents only Medicaid claims. *See Rhode Island Hosp.*, 585 F.2d at 1161-62.

must seek review of this determination through the Medicare administrative appeals procedure.

In the present case, the ODH performed several surveys of Beechknoll and found that it was not in substantial compliance with the common Medicare and Medicaid certification and quality of care requirements. The Secretary then adopted the ODH's recommendation to deny payment for new Medicare admissions, to impose a civil penalty, and to terminate Beechknoll's provider agreements for the Medicare and Medicaid programs. Beechknoll now challenges the Secretary's imposition of remedies and the termination of its participation in both the Medicare and Medicaid programs. Under the Medicare and Medicaid statutory and regulatory provisions discussed above, Beechknoll must obtain review of the Secretary's decision through the Medicare administrative appeals procedure.

Moreover, we have held that where a provider is dually certified and brings a claim that challenges determinations made under both the Medicare and Medicaid Acts, the provider cannot avoid the jurisdictional bar and administrative channeling of the Medicare Act simply by characterizing the claim as arising under the Medicaid Act. In *Michigan Association of Homes & Services*, an association of nursing facilities certified to participate in both the Medicare and Medicaid programs argued that its claims, which challenged the Secretary's Medicare and Medicaid regulations, policies, and practices regarding nursing home examinations, certification, administration, enforcement, and appeal, arose under the Medicaid Act rather than the Medicare Act. *See* 127 F.3d at 502. We concluded, however, that "[e]ven if we were to interpret the Association's claim as arising under the Medicaid Act, the Association would still be required to exhaust its administrative remedies." *Id.* We reasoned that a contrary conclusion would "'allow [the Medicaid Act] to become the back door into the [Medicare Act], which has barred this case from entrance, would result in an automatic circumvention of the [Medicare programs] administrative machinery when its cost limitations have been

error. *See Michigan Ass'n of Indep. Clinical Labs. v. Shalala*, 52 F.3d 1340, 1346 (6th Cir. 1994).

## B.  Jurisdiction under the Medicare Act

Under 42 U.S.C. § 1395cc(h)(1), an institution "dissatisfied with a determination by the Secretary . . . described in subsection (b)(2) of this section shall be entitled to a hearing thereon by the Secretary . . . and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title." The referenced subsection (b)(2) sets forth the Secretary's power to terminate an agreement with a provider of services to participate in the Medicare program, including situations in which "the provider fails to comply substantially with the provisions of the agreement, [or] with the provisions of [the Medicare Act] and regulations thereunder." 42 U.S.C. § 1395cc(b)(2)(A). The Secretary's findings and decision to terminate participation in the Medicare program thus are subject to judicial review under § 405(g), which states:

> Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow.

42 U.S.C. § 405(g).

Under 42 U.S.C. § 1395ii, the Medicare Act incorporates 42 U.S.C. § 405(h), which provides that the Secretary's findings and final decision after a hearing are binding on the parties to the hearing. This provision also limits judicial review as follows: "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided" and no action against the Secretary "shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under" the Medicare Act. 42 U.S.C. § 405(h). This section "channels most, if not all, Medicare claims through [the]

special review system" of an administrative hearing and "purports to make exclusive the judicial review method set forth in § 405(g)." *Shalala v. Illinois Council on Long Term Care, Inc.*, 120 S. Ct. 1084, 1091 (2000); *see also Michigan Ass'n of Homes & Servs. for the Aging, Inc. v. Shalala*, 127 F.3d 496, 499 (6th Cir. 1997); *Livingston Care Ctr., Inc. v. United States*, 934 F.2d 719, 721 (6th Cir.), *cert. denied*, 502 U.S. 1003 (1991).

We have held that in order to obtain judicial review under § 405(g), a party must comply with "(1) a nonwaivable requirement of presentation of any claim to the Secretary, and (2) a requirement of exhaustion of administrative review, which the Secretary may waive." *Michigan Ass'n of Homes & Servs.*, 127 F.3d at 499 (citing *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)). In *Ringer*, the Supreme Court held that a challenge of a Secretary's decision not to provide reimbursement to individuals who receive a particular medical treatment is a claim that "arises under the Medicare Act," and therefore § 405(h) is applicable and judicial review must be obtained through § 405(g), which requires the exhaustion of administrative remedies. *See* 466 U.S. at 615-17. The Supreme Court recently examined and reaffirmed the *Ringer* decision, noting that it held that "all aspects" of a present or future claim for benefits must be "channeled" through the administrative process. *See Illinois Council*, 120 S. Ct. at 1093 (quoting *Ringer*, 466 U.S. at 614). "As so interpreted, the bar of § 405(h) reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies'" where exceptions may apply and instead "demands the 'channeling' of virtually all legal attacks through the agency." *Id.* This system "assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts," although "this assurance comes at a price, namely, occasional individual, delay-related hardship." *Id.* The Court concluded, however, that "[i]n the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated

## C.  Jurisdiction under the Medicaid Act

In the alternative, Beechknoll argues that its claims also arise under the Medicaid Act because the Secretary terminated its Medicaid provider agreement, and therefore that it is not required to exhaust its administrative remedies through the Medicare procedures before seeking judicial review. The Medicaid Act does not have a provision, such as §1395ii in the Medicare Act, incorporating § 405(h) and its exclusive jurisdiction limitation to channel legal challenges through the administrative procedures set forth in § 405(g).

The Medicare and Medicaid Acts impose common certification and quality of care requirements on nursing facilities. *See* 42 U.S.C. § 1395i-3(a)(3), (b)-(d) (Medicare); 42 U.S.C. § 1396r(a)(3), (b)-(d) (Medicaid); 42 C.F.R.§ 483.1 (facilities must comply with the same requirements in order to participate in the Medicare and Medicaid programs). Where the Secretary finds that a dually certified nursing facility is not in compliance with these requirements, it has authority to impose remedies on the facility, including termination, under both the Medicare and Medicaid Acts. *See* 42 U.S.C. § 1395i-3(h)(2)-(4) (Medicare); 42 U.S.C. § 1396r(h)(3)-(5) (Medicaid). The regulations provide that the appeals procedures set forth for reviewing the Secretary's determinations affecting participation in the Medicare program also apply to the Secretary's determination to terminate a nursing facility's Medicaid provider agreement. *See* 42 C.F.R.§ 498.3(2)(i); *see also* 42 C.F.R. § 498.4 (stating that a Medicaid nursing facility is treated as a Medicare provider subject to the Medicare administrative appeals procedures when it has agreed to participate in both Medicaid and Medicare and is the subject of a compliance action following review of a state's survey findings). The Medicare and Medicaid statutory and regulatory provisions thus provide that when a dually certified facility challenges a determination that it is not in substantial compliance with the common Medicaid and Medicare regulations and a termination of its participation in both programs, the facility

government's strong interest in an expeditious procedure against the provider's less significant interest and the relatively small risk of erroneous termination, the court held that a provider's procedural due process rights are adequately protected by a post-termination hearing. *See id.*; *see also Varandani v. Bowen*, 824 F.2d 307, 310-11 (4th Cir. 1987) (holding that a physician is not entitled to a formal hearing before being suspended from the Medicare program under *Eldridge*), *cert. dismissed*, 484 U.S. 1052 (1988); *Ritter v. Cohen*, 797 F.2d 119, 123 (3d Cir. 1986) (concluding that a physician faced with termination of participation in the Medicaid program is not entitled to a pre-termination hearing under *Eldridge*); *Geriatrics, Inc. v. Harris*, 640 F.2d 262, 265 (10th Cir.) (holding that a nursing home participating in the Medicaid program is not entitled to a pre-termination hearing), *cert. denied*, 454 U.S. 832 (1981).

We find the Seventh Circuit's analysis persuasive and conclude that Beechknoll is not entitled to a pre-termination hearing under the Due Process Clause for the reasons set forth in the Seventh Circuit's opinion. *See Northlake Community Hosp.*, 654 F.2d at 1241-43. Because Beechknoll has not made a colorable claim that full relief would not be possible through a post-termination hearing and that it is entitled to a pre-termination hearing, we conclude that the Supreme Court's "entirely collateral" exception to the exhaustion of administrative remedies set forth in *Eldridge* is not applicable to this claim.

In sum, we conclude that the district court did not have jurisdiction to consider the claims presented in Beechknoll's complaint or in its motion for preliminary injunctive relief because Beechknoll failed to exhaust its administrative remedies and neither the *Michigan Academy* nor the "entirely collateral" exception, which both allow federal jurisdiction despite the failure to exhaust all administrative remedies, is applicable in this case.

regulations . . . paying this price may seem justified." *Id.* Based on this interpretation of § 405(h), virtually all legal challenges to an administrative determination must be channeled through the Secretary's administrative process before judicial review is available as set forth in § 405(g), and any claimed exceptions to this requirement of exhaustion of administrative remedies must be examined critically.

### 1. Application of the *Michigan Academy* exception

Although Beechknoll acknowledges that a party is required to exhaust its administrative remedies prior to seeking judicial review of a Secretary's determination under § 405(g), it asserts that it is not subject to this requirement because §1395ii, which incorporates § 405(h) and its jurisdictional limitation for Medicare challenges to § 405(g), only applies to challenges to "amount determinations." Beechknoll relies on *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), for this proposition. In *Michigan Academy*, a group of physicians filed suit in federal district court challenging the validity of a regulation promulgated under Part B of the Medicare program establishing the method for calculating the payment of benefits. Under Part B, the Secretary contracts with private insurance carriers to provide voluntary supplementary medical insurance. The Medicare statute in effect at that time simply required a "fair hearing" by private insurance carriers for disputes regarding "amount determinations" under Part B, and was silent regarding the proper procedure for a challenge to the method by which an amount is determined. *See id.* at 675-76. An administrative hearing and judicial review through § 405(g) was not available for either type of determination. The Supreme Court held, "[c]areful analysis of the governing statutory provisions and their legislative history thus reveals that Congress intended to bar judicial review only of determinations of the amount of benefits to be awarded under Part B." *Id.* at 678. It then rejected the argument that § 405(h), as incorporated through § 1395ii, altogether barred judicial review of a challenge to the method used in amount

determinations brought under 28 U.S.C. § 1331.  The Court reasoned:

> The legislative history of both the statute establishing the Medicare program and the 1972 amendments thereto provides specific evidence of Congress' intent to foreclose review only of "amount determinations" – *i.e.*, those "quite minor matters," remitted finally and exclusively to adjudication by private insurance carriers in a "fair hearing."  By the same token, matters which Congress did *not* delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations, are cognizable in courts of law.  In the face of this persuasive evidence of legislative intent, we will not indulge the Government's assumption that Congress contemplated review by carriers of "trivial" monetary claims, but intended no review at all of substantial statutory and constitutional challenges to the Secretary's administration of Part B of the Medicare program.

*Id.* at 680 (citations and footnotes omitted).  The Court thus allowed the physicians to bring their challenge to the methods used in calculating the amount of benefits under § 1331.

Although the Seventh Circuit interpreted *Michigan Academy* as limiting the application of § 1395ii and therefore § 405(h) to challenges to "amount determinations," the Supreme Court expressly has rejected this interpretation.  *See Illinois Council on Long Term Care, Inc. v. Shalala*, 143 F.3d 1072, 1075-76 (7th Cir. 1998), *rev'd*, 120 S. Ct. 1084 (2000).  Rather, the Court explained that § 1395ii did not apply §405(h) in *Michigan Academy* "where its application to a particular category of cases, such as Medicare Part B 'methodology' challenges, would not lead to a channeling of review through the agency, but would mean no review at all." *Illinois Council*, 120 S. Ct. at 1095-96.  The Court noted that the Seventh Circuit's interpretation "would have overturned or dramatically limited this Court's earlier precedents" involving Social Security and Medicare Part A cases and

patients and clients of such facilities").[6]  A provider will still be able to receive payments from the care of private patients.  Second, the court concluded that "[t]he risk of erroneous deprivation of provider status is also quite manageable." *Northlake Community Hosp.*, 654 F.2d at 1242.  A termination decision is well-documented and typically is based on survey reports from unbiased health professionals who apply well-defined criteria developed through the administrative process; the provider has the opportunity to submit written material in response to the survey findings so that a hearing likely is not necessary for the provider to present its position. *See id.* (relying on *Town Court*, 586 F.2d at 277).  Finally, the court stated that the government has a strong interest in expeditious provider-termination procedures for two reasons:  first, "[t]he Secretary's responsibility for insuring the safety and care of elderly and disabled Medicare patients is of primary importance," and second, "the government has a strong interest in minimizing the expenses of administering the Medicare program." *Id.*  Balancing the

---

[6] We note that the Supreme Court recently reaffirmed that "the elderly and disabled rank as the primary beneficiaries of the Medicare program." *Fischer v. United States*, 120 S. Ct. 1780, 1786 (2000).  The Court went on to conclude, however, that Medicare providers also receive "benefits" within the meaning of the federal bribery statute, 18 U.S.C. § 666(b), which prohibits defrauding an organization which "receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance."  The structure and operation of the Medicare program show that Congress intended to provide a certain quality of care for patients and to maintain provider stability in order to ensure that providers are able to continue giving such care.  The funds a provider receives for participating in the Medicare program thus are intended in part to keep providers financially stable and constitute "benefits" to providers under § 666(b). *See id.* at 1788.  This holding does not change our analysis in this case because the Court acknowledged that the patients are the primary beneficiaries of the Medicare program and that any benefits to providers are intended to help them maintain a certain quality of care for their patients.  Beechknoll allegedly has failed to meet the Medicare program's quality of care standards to the detriment of its patients, and therefore its interests in receiving continued Medicare payments cannot outweigh the interests of its patients in receiving quality care.

irreparable harm for the equitable determination whether or not to grant a preliminary injunction").

Moreover, we hold that Beechknoll has not made a colorable claim that it is entitled to a pre-termination hearing under the Due Process Clause. The Supreme Court has set forth the following factors for determining whether procedural due process requires a pre-termination hearing:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge*, 424 U.S. at 335; *see Gilbert v. Homar*, 520 U.S. 924, 931-32 (1997); *see also United States v. Brandon*, 158 F.3d 947, 953 (6th Cir. 1998) (applying the *Eldridge* analysis to evaluate the procedural safeguards required under the Due Process Clause).

In *Northlake Community Hospital v. United States*, 654 F.2d 1234, 1241-43 (7th Cir. 1981), the Seventh Circuit concluded that a Medicare provider is not entitled to hearing before the termination of its provider agreement under this analysis. First, the court noted that the private interest at stake is not particularly strong because the Medicare provider is not the intended beneficiary of the Medicare program. *See id.* at 1242 (citing *Town Court Nursing Ctr., Inc. v. Beal*, 586 F.2d 266, 277 (3d Cir. 1978)). Although termination of its agreement may have a severe economic impact on the provider, "a provider's financial need to be subsidized for the care of its Medicare patients is only incidental to the purpose and design of the [Medicare] program." *Id.* (quotations omitted); *see also Green v. Cashman*, 605 F.2d 945, 946 (6th Cir. 1979) (commenting that the Medicare and Medicaid statutes were not designed "to provide financial assistance to providers of care for their own benefit" but rather "to aid the

would have resulted in an unjustifiable distinction between the treatment of "amount determinations" and other similar determinations by the Secretary. *Id.* at 1096. The Supreme Court thus limited its holding in *Michigan Academy*, restricting the application of § 1395ii and § 405(h) to those cases in which "application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Id.* at 1096-97.[2] This limitation applies in the context of both Medicare Part A and Medicare Part B cases. *See id.* at 1097.[3]

In light of the Supreme Court's holding in *Illinois Council*, we must reject Beechknoll's argument that § 1395ii and § 405(h) and (g) only apply to challenges to "amount determinations." Rather, in order to determine whether the *Michigan Academy* exception is applicable, we must examine whether Beechknoll is simply being required to seek review

---

[2]Beechknoll also cites to *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 497-98 (1991), for the proposition that a federal court may have jurisdiction under *Michigan Academy* over general pre-enforcement challenges to the Medicare Act but not over individual benefit determination challenges. In *Haitian Refugee Center*, the Supreme Court held that the district court had subject matter jurisdiction to consider plaintiffs' constitutional and statutory challenges to several INS procedures despite a provision limiting federal court jurisdiction because the plaintiffs otherwise would not be able to obtain any meaningful judicial review of the INS's determinations. *See id.* at 496-98. Therefore, this case involves the same reasoning and analysis as *Michigan Academy*: the court must examine whether the plaintiff is precluded from seeking judicial review altogether.

[3]The government correctly points out that Congress amended the Medicare Act in 1986 so that Part B amount determinations now are entitled to both administrative and judicial review. *See* 42 U.S.C. § 1395ff. In light of this amendment, we have concluded that claims under Part A and Part B now must be treated in an identical manner and that we no longer apply an amount versus methodology analysis to determine whether federal jurisdiction is appropriate in Part B cases. *See Farkas v. Blue Cross & Blue Shield of Michigan*, 24 F.3d 853, 860 (6th Cir. 1994). Thus, now even challenges to the methodology of a Part B amount determination must be made through the administrative process before judicial review is possible. *See id.*

first through the agency or is being denied altogether the opportunity for judicial review. *See Illinois Council*, 120 S. Ct. at 1096-97; *see also Michigan Ass'n of Homes & Servs.*, 127 F.3d at 500 (interpreting *Michigan Academy* and *Haitian Refugee Center* "to carve out an exception to the limitations of jurisdictional provisions similar to section 405(h) in cases of futility where plaintiffs would not otherwise be able to obtain judicial review of their claims").

In its complaint, Beechknoll seeks declaratory relief challenging the lawfulness of the Secretary's termination of Beechknoll's Medicare and Medicaid provider agreements and imposition of additional remedies. Beechknoll also requests a "permanent[]" injunction preventing the Secretary from terminating its agreements and from refusing to pay for covered services to its eligible residents "pending the outcome of an administrative hearing." J.A. at 10 (Complaint). As Beechknoll concedes, where the Secretary terminates a provider's agreement to participate in the Medicare program for failure to comply substantially with the agreement or the Medicare regulations, the provider is entitled to a hearing and then judicial review of the Secretary's final decision after the hearing. *See* § 1395cc(h) & § 405(g). A party may obtain judicial review of a Secretary's final decision by filing a civil suit in federal district court within sixty days after notice of the decision is mailed. *See* § 405(g). Accordingly, once the Secretary issues a final decision, Beechknoll may seek judicial review of the decision. Application of § 1395ii and § 405(h) in this case will not prevent judicial review altogether; Beechknoll simply must exhaust its administrative remedies before this review can take place. Therefore, we conclude that the *Michigan Academy* exception is not applicable in this case.

### 2. Application of the "Entirely Collateral" Exception

Beechknoll also argues that because its claims are "entirely collateral" to a substantive claim for benefits, it is not required to exhaust its administrative remedies in order to obtain judicial review. In *Mathews v. Eldridge*, 424 U.S. 319,

must determine whether Beechknoll has made a colorable claim that full relief would not be possible if it was awarded retroactive relief through a post-deprivation hearing. *See id.* The district court made the following findings on this issue:

> The Plaintiff is a corporation who is a wholly owned subsidiary of a larger corporation that handles multi or administers a number of nursing homes. There is no evidence that this Court can glean from this record that the corporation would, in any way, be irreparably harmed in this matter other than that their payments that they might be legitimately entitled to, would not be reimbursable to them after the conclusion of the administrative process. . . . [Plaintiff's] injuries, if any, could be remedied by retroactive payment after exhaustion. Plaintiff apparently [is] financially sound. The number of beds involved compared to the total number in the facility and the other facilities that the Plaintiff's mother corporation holds, comparing the fifty beds of Medicare and Medicaid patients here is minimal.

J.A. at 696-97 (Hearing Tr.). In response, Beechknoll does not cite to any harm that it would suffer if forced to exhaust its administrative remedies before obtaining judicial review of the Secretary's determination. Instead, Beechknoll claims that as a result of losing its right to participate in the Medicare and Medicaid programs, it will have to discharge and transfer its patients receiving care under these programs, and these patients will suffer irreparable harm of "transfer trauma." In *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 787-90 (1980), the Supreme Court determined that nursing home patients do not have standing to challenge the Secretary's decertification of their facility. Because the Beechknoll patients do not have standing to challenge the Secretary's determination, Beechknoll cannot rely solely on the irreparable harm to its patients in this analysis. *But see Mediplex*, 39 F. Supp. 2d at 98-99 (concluding that "while the residents here do not formally have standing to appear before the court . . . their interests are still relevant in evaluating

benefits for its ambulance service.  *Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 579 (6th Cir. 1995) (quoting *Ringer*, 466 U.S. at 614).  Such a claim is "inextricably intertwined" because if the ambulance provider were successful in reversing the Secretary's determination, then it would be entitled to increased benefits for its vehicles. *See id.*  To conclude otherwise would allow any party to avoid the Medicare Act's administrative procedures for reviewing the Secretary's determinations simply by making purely legal constitutional or statutory arguments.  Rather, a court must examine whether the allegedly collateral claim involves completely separate issues from the party's claim that it is entitled to benefits or continued participation in the Medicare program or whether it is inextricably intertwined with its substantive claim to benefits or participation.

In the present case, Beechknoll's motion for injunctive relief challenges the Secretary's termination of its provider agreement on two grounds:  (1) the absence of a finding of immediate jeopardy and (2) the denial of a pre-termination hearing.  Beechknoll characterizes these claims as "question[s] of law regarding the scope of the Secretary's power" that are collateral to its substantive challenges to the Secretary's determination. *See* Appellant's Final Brief at 16.  We conclude, however, that Beechknoll's claim that the Secretary erred in terminating its participation in the Medicare program absent a finding of immediate jeopardy is "inextricably intertwined" with Beechknoll's substantive challenge to the Secretary's termination decision because a favorable resolution of this claim would result in the reinstatement of its Medicare provider agreement. Therefore, it cannot be considered an "entirely collateral" claim. *See Manakee Prof'l Med. Transfer Serv.*, 71 F.3d at 579.

Like *Eldridge*, Beechknoll's second argument, that it is entitled to a pre-termination hearing under the Due Process Clause, involves Beechknoll's procedural constitutional rights and is "entirely collateral" from its substantive challenge to the Secretary's termination decision. *See* 424 U.S. at 330-32. Because this particular challenge is "entirely collateral," we

330-32 (1976), the Supreme Court held that the Secretary's denial of an individual's request for benefits constituted a final decision for the purpose of § 405(g) jurisdiction, even though he had not exhausted fully the Secretary's administrative procedures, because the individual's claim that a pre-deprivation hearing is constitutionally required is "entirely collateral" to his substantive claim of entitlement and because he made a colorable claim that full relief would not be possible if he was awarded retroactive benefits through a post-deprivation hearing.  The Supreme Court recently explained that the *Eldridge* opinion did not create an exception to the application of § 405(g) and (h), but rather required the Secretary to excuse some of its procedural requirements so that its decision would be considered a "final decision" and judicial review could follow under § 405(g). *See Illinois Council*, 120 S. Ct. at 1094.

This "entirely collateral" exception to the exhaustion of administrative remedies requirement is not applicable to the claims in Beechknoll's complaint because they directly challenge the Secretary's substantive determinations in imposing remedies against it rather than making any "entirely collateral" challenges to the Secretary's substantive determinations. Beechknoll, however, also contends that the district court had jurisdiction to rule on its motion for a temporary restraining order.  Because this motion requests that the district court prevent the Secretary from imposing its remedies pending the outcome of its administrative hearing, Beechknoll asserts that it does not seek substantive review of the Secretary's determination but rather presents an "entirely collateral" claim.[4]  We note that Beechknoll requests an injunction pending the outcome of its administrative hearing rather than the 10-day period generally allowed under a

---

[4] This case is distinguishable from *Illinois Council*, in which the plaintiff challenged an agency decision by filing a lawsuit rather than seeking administrative review.  *See* 120 S. Ct. at 1094.  Beechknoll requested injuctive relief to prevent the termination of its Medicare and Medicaid provider agreements while it sought the appropriate administrative review.

temporary restraining order, and therefore it appears that Beechknoll actually seeks a preliminary injunction from the district court. *See* FED. R. CIV. P. 65(a) & (b). Beechknoll cites to several district court cases which seem to grant federal jurisdiction in this particular situation. In *Libbie Rehabilitation Center, Inc. v. Shalala*, 26 F. Supp. 2d 128, 130-31 (D.D.C. 1998), the district court concluded that it had jurisdiction to issue a preliminary injunction where "a claim challenging the Secretary's authority for failure to adhere to the specific requirements of the Medicare Act in ordering a 'termination' of benefits payments is 'entirely collateral' to a claim for benefits and, therefore, falls outside the jurisdiction restrictions of §§ 405(g) and 405(h)." *See also Vencor Nursing Ctrs., L.P. v. Shalala*, 63 F. Supp. 2d 1, 5 (D.D.C. 1999). Similarly, other district courts have concluded that where a party asserts a legal challenge to the Secretary's scope of authority to terminate a provider agreement, which involves general questions of statutory construction rather than the particular facts involved in the Secretary's termination decision, and the party could be irreparably harmed if required to exhaust administrative remedies before seeking review from the courts, then that party is excused from the exhaustion requirement for a "final decision" under *Eldridge* and the court has jurisdiction to issue a preliminary injunction. *See Lake County Rehabilitation Ctr., Inc. v. Shalala*, 854 F. Supp. 1329, 1336 (N.D. Ind. 1994); *see also Mediplex of Massachusetts, Inc. v. Shalala*, 39 F. Supp. 2d 88, 93 (D. Mass. 1999) (adopting reasoning of *Lake County*); *Northern Health Facilities, Inc. v. United States*, 39 F. Supp. 2d 563, 570 (D. Md. 1998) (same).

It appears that no circuit court of appeals has been presented with the opportunity to review these district court opinions allowing jurisdiction under the "entirely collateral" exception.[5] After careful analysis of the *Eldridge* opinion, we

---

[5] Beechknoll claims that one circuit court has followed the district courts' holdings, but does not provide a citation. Although it seems that Beechknoll may be referring to *Illinois Council on Long Term Care, Inc. v. Shalala*, 143 F.3d 1072 (7th Cir. 1998), *rev'd*, 120 S. Ct. 1084 (2000),

conclude that the district courts cited above conducted an improper analysis in determining whether a claim is collateral to a substantive challenge under the Medicare Act. In *Eldridge*, an individual brought suit in federal court claiming that under the Due Process Clause of the Constitution he was entitled to a hearing before his benefits were terminated, which the Supreme Court concluded was an entirely separate claim from his substantive challenge to the termination of his benefits. *See* 424 U.S. at 330-31. The individual's constitutional claim regarding his procedural rights involved an analysis of the Supreme Court's jurisprudence on the Due Process Clause, which involved completely separate issues than his challenge to the Secretary's decision to terminate benefits.

The district court opinions allowing jurisdiction under the "entirely collateral" exception reason that where a party's challenge to the Secretary's authority to terminate a provider agreement presents a legal question involving general statutory analysis, it is collateral to a claim challenging the Secretary's decision to terminate the agreement based on the particular facts of the case. A party's characterization of its challenge to the Secretary's termination of a provider agreement as a purely legal or statutory question, however, is not sufficient by itself to constitute an "entirely collateral" claim. *See Michigan Ass'n of Homes & Servs.*, 127 F.3d at 500-01 (concluding that there is no "broad exception for facial constitutional and statutory challenges to agency administration as opposed to individual challenges that are intertwined with claims for benefits"). For example, we have concluded that where an ambulance provider makes the legal argument that the Secretary violated the Medicare regulations and the Due Process Clause in determining that certain vehicles do not qualify as ambulances for the purpose of Medicare reimbursement, this challenge is "inextricably intertwined" with the party's claim that it is entitled to

---

the Seventh Circuit did not in fact resolve any question regarding the "entirely collateral" exception.