FORUM HEALTHCARE GROUP, INC., Forum Group at Mount Berry Nursing and Rehabilitation Center, LLC, and Forum Group at Moran Lake Nursing and Rehabilitation Center, LLC, Plaintiffs,

v.

THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, the Georgia Department of Human Resources, and the Georgia Department of Community Health, Defendants.

No. 4:07 CV 0138 HLM.

United States District Court,
N.D. Georgia,
Rome Division.

July 11, 2007.

Jeffrey C. Baxter, Nelson Mullins Riley & Scarborough, Atlanta, GA, for Plaintiffs.

ORDER

MURPHY, District Judge.

This case is before the Court on Plaintiffs' Motion for a Temporary Restraining Order [5–1].

## I. Procedural Background

On July 6, 2007, Plaintiffs filed this lawsuit, along with their Motion for Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction ("Motion for Temporary Restraining Order"). As of the date of this Order, the Clerk's docket indicates that Plaintiffs have not yet filed returns of service indicating that Plaintiffs have served Defendants properly with process. Because this case involves a time-sensitive matter, and because the allegations of Plaintiffs' Complaint establish that the Court lacks subject-matter jurisdiction over the case, the Court dismisses the case and Plaintiffs' Motion for Temporary Restraining Order without prejudice.

## II. Plaintiffs' Allegations

### A. The Parties

Plaintiff Forum Healthcare Group, Inc. ("Plaintiff Forum") is a Georgia for-profit corporation. (Verified Compl. ("Compl.") ¶ 1.) Forum owns and operates two minority-owned nursing homes, Plaintiff Forum Group at Mount Berry Nursing and Rehabilitation Center ("Plaintiff Mount Berry") and Plaintiff Forum Group at Moran Lake Nursing and Rehabilitation Center ("Plaintiff Moran Lake"). (Id.)

Defendant The Centers for Medicare and Medicaid Services ("Defendant CMS") is a division of the United States Department of Health and Human Services. (Compl. ¶ 2.) Defendant CMS is responsible for administering the Medicaid program, which provides health insurance benefits for elderly and disabled individuals by making payments to health care providers. (Id.) Defendant CMS has entered into provider agreements with Plaintiffs Mount Berry and Moran Lake for the provision of skilled nursing care. (Id.)

Defendant The Georgia Department of Human Resources ("Defendant DHR") is a Georgia agency charged with monitoring and inspecting health care providers to ensure that the providers comply with conditions of participating in the Medicare and Medicaid programs. (Compl. ¶ 3.)

Defendant The Georgia Department of Community Health ("Defendant DCH") is the Georgia agency that administers the Medicaid program in Georgia. (Compl. ¶ 4.) The Medicaid program in Georgia provides health insurance benefits to low income individuals. (Id.) Defendant DCH has entered into provider agreements with Plaintiffs Mount Berry and Moran Lake for the provision of skilled nursing care. (Id.)

### B. Jurisdiction and Venue

Plaintiffs simply allege: "This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331." (Compl. ¶ 5.) Plaintiffs contend that they meet an exception to the requirement that they exhaust their administrative remedies, because their "claim for injunctive relief is completely collateral to the substantive issue of whether [they are] in compliance with the requirements of the Medicare and Medicaid programs." (Id.) Plaintiffs fail to cite any statutes or constitutional provisions that they claim Defendants may have violated.

### C. Factual Allegations

Plaintiffs Mount Berry and Moran Lake were certified to participate in both the Medicare and Medicaid programs. (Compl. ¶ 7.) Plaintiffs Mount Berry and Moran Lake have entered into provider agreements with Defendants CMS and DCH for the provision of skilled nursing services to eligible residents. (Id.) To receive payment for services provided under such agreements, a provider must comply with established standards of care. (Id.) Providers covered by such agreements also are subject to periodic inspection services by Defendant DCH to determine

whether the providers comply with the applicable standards of care. (*Id.*)

Plaintiff Mount Berry cares for approximately eighty-one residents. (Compl.¶ 8.) At least eighty-five percent of those residents receive benefits through Medicaid, and approximately ten percent of the residents receive benefits through Medicare. (*Id.*) Less than five percent of the residents pay for their care through private insurance. (*Id.*)

Plaintiff Moran Lake cares for approximately ninety-three residents. (Compl.¶ 9.) At least ninety-five percent of Plaintiff Moran Lake's residents receive benefits from Medicaid, while the remaining five percent of the residents either are eligible for Medicare or pay for their care through private insurance. (*Id.*)

On Sunday, May 20, 2007, surveyors from Defendant DHR arrived at Plaintiffs Moran Lake and Mount Berry to conduct an inspection survey for determining compliance with Medicaid. (Compl.¶ 10.) After the surveys concluded, Defendant DHR issued a Statement of Deficiencies to each facility, and recommended that Defendant CMS terminate the provider agreements with Plaintiffs Mount Berry and Moran Lake if the facilities failed to correct the listed deficiencies by June 15, 2007. (*Id.*)

On June 11, 2007, Plaintiffs Mount Berry and Moran Lake submitted Allegations of Compliance to Defendant DHR, detailing the measures they had taken to remedy the perceived deficiencies that Defendant DHR alleged resulted in immediate jeopardy to residents. (Compl.¶ 11.)

On June 14, 2007, Defendant DHR returned to Plaintiffs Mount Berry and Moran Lake for a re-visit survey. (Compl.¶ 12.) Defendant DHR alleged that the facilities had failed to address the deficiencies adequately, and again recommended the termination of the provider agreements with the facilities. (*Id.*)

On June 15, 2007, Defendant CMS notified Plaintiffs Mount Berry and Moran Lake that the provider agreements would terminate on that date and that payments to the facilities would continue through July 15, 2007, to allow for the relocation of residents. (Compl.¶ 12.) Defendant DCH is authorized to terminate its provider agreement with Plaintiffs Moran Lake and Mount Berry based on those facilities' exclusion from the Medicare program. (*Id.*)

On June 15, 2007, Plaintiffs Mount Berry and Moran Lake submitted Plans of Corrections ("POCs") detailing the steps that those facilities had taken to address the deficiencies cited by Defendant DHR, as well as documenting the policies and procedures the facilities were implementing to prevent future deficiencies. (Compl.¶ 14.) Plaintiffs Mount Berry and Moran Lake listed a completion date of July 30, 2007, for each item listed on the POCs. (*Id.*)

Because nearly all of the residents at Plaintiffs Mount Berry and Moran Lake receive Medicaid or Medicare, neither of those facilities can afford to care for residents once Defendants CMS and DCH stop making payments to the facilities. (Compl.¶ 15.) Plaintiffs contend that the facilities will be forced to relocate their residence and close their doors by July 15, 2007, or shortly afterward. (*Id.*)

On June 22, 2007, David Dunbar, the Director of Defendant DHR's Long Term Care Section, held a meeting at Plaintiff Mount Berry to educate the residents and their families concerning the relocation process. (Compl.¶ 16.) Mr. Dunbar informed the individuals attending the meeting that only a handful of openings existed at facilities in the Rome, Georgia, area, and that most residents would need to relocate to the North Macon Health Care Facility located in Macon, Georgia. (*Id.*)

According to Plaintiffs, relocation often has serious detrimental effects on nursing home residents. (Compl.¶ 17.) Plaintiffs assert that relocation often results in "transfer trauma," which can lead to depression, serious illness, and death. (*Id.*) Because many of the residents at Plaintiffs Mount Berry and Moran Lake have lived there for at least ten years, relocation will cause a serious upheaval of the residents' lives and community. (*Id.* ¶ 18.) Plaintiffs contend that the residents at Plaintiff Moran Lake are particularly at risk, because many of the residents have mental retardation, profound developmental disabilities, or suffer from psychiatric illnesses. (*Id.* ¶ 19.) Many of the residents at Plaintiff Moran Lake have resided there for over twenty years, with some residents residing there for up to forty years. (*Id.*) Plaintiffs allege that relocating those residents will cause emotional, psychological, and physical harm to the residents, as well as disruption, and that finding alternative homes for those residents will be difficult because the residents have unique requirements and "are not a desirable population." (*Id.*)

Plaintiffs Mount Berry and Moran Lake have requested informal dispute resolution with Mr. Dunbar to dispute the cited deficiencies. (Compl.¶ 20.) On July 3, 2007, Plaintiffs Mount Berry and Moran Lake filed administrative appeals and requested expedited hearings to appeal the termination of the provider agreements on the merits before a State administrative law judge. (*Id.* ¶ 21.) Plaintiffs assert that, since June 15, 2007, "relocation teams from [Defendant] DHR have descended upon both [Plaintiff] Mount Berry and [Plaintiff] Moran Lake, picking and choosing which residents should be sent to various alternative nursing facilities located across the State of Georgia." (*Id.* ¶ 22.)

### D. Plaintiffs' Claims

Plaintiffs assert only one claim, a claim for an injunction. (Compl.¶¶ 23–31.) Plaintiffs contend that they have appropriately and timely initiated their administrative appeal rights, have requested informal dispute resolution, and have requested an expedited hearing on the merits. (*Id.* ¶ 24.) Plaintiffs contend that the "appeals process is entirely meaningless if [Defendants] CMS and DHR are not enjoined from stopping reimbursement payments and relocating residents out of the facilities until an administrative hearing can be held and decided upon." (*Id.* ¶ 25.) Plaintiffs assert that they and their residents will suffer irreparable and imminent harm if the Court permits Defendant CMS to stop making payments to Plaintiffs Mount Berry and Moran Lake, as stopping payments will make it impossible for those facilities to continue caring for residents, and will force the facilities to close. (*Id.* ¶ 26.) Plaintiffs assert that their residents will suffer serious physical, psychological, and emotional injuries. (*Id.*) Plaintiffs contend that they do not have an adequate remedy at law, as "the harm that is sought to be prevented is not merely financial, but also includes severe business disruption as well as physical, psychological, and emotional harm to the residents and the residents' families, which cannot be remedied by money damages alone." (*Id.* ¶ 27.)

Plaintiffs contend that they have a substantial likelihood of succeeding on the merits of their appeals, because Defendants inaccurately classified several of the deficiencies during the June 14, 2007, revisit survey. (Compl.¶ 28.) Plaintiffs contend that they already had addressed the majority of the deficiencies by the re-visit survey, and that Defendant DHR erred by not finding several of the deficiencies resolved or at least finding that the deficiencies were of a lower scope and severity.

(*Id.*) Plaintiffs allege that they had resolved any immediate deficiencies cited during the initial survey by the time of the re-visit. (*Id.*)

Plaintiffs further assert that an injunction is necessary to maintain the status quo until the parties' issues can be heard on the merits through exhaustion of administrative remedies. (Compl.¶ 29.) Plaintiffs allege that the damage to Plaintiffs from not entering an injunction will be "devastating and impossible to repair," and that Defendants will suffer no damages, "since they will be paying for the residents' care one way or another." (*Id.* ¶ 30.) Plaintiffs further contend that an injunction will serve the public interest, "given the disruption and stress that relocation will cause for the residents of these facilities and their families." (*Id.* ¶ 31.)

## III. Discussion

### A. Plaintiffs' Arguments

Plaintiffs argue that the Court should issue a TRO to preserve the status quo while the parties resolve their dispute through the administrative appeals process. Plaintiffs contend that stopping payments to Plaintiffs Mount Berry and Moran Lake will force those facilities to close by July 15, 2007, as the facilities cannot afford to care for the residents once Defendants stop making payments to the facilities. Plaintiffs assert that their residents will suffer serious harm from transferring to other facilities. Plaintiffs further assert that several of the deficiencies cited by Defendant DHR are not supported by the facts. According to Plaintiffs, unless the Court enjoins Defendants from terminating payments to Plaintiffs Moran Lake and Mount Berry, the administrative hearings will be rendered moot. Plaintiffs request that the Court order Defendants to continue payments for care and to cease the relocation process until after an administrative hearing on the merits of the decision to terminate the provider agreement occurs.

Plaintiffs assert that the Court has authority under Federal Rule of Civil Procedure 65 to order a TRO to preserve the status quo. According to Plaintiffs, they and their residents will suffer irreparable harm if Defendants stop making payments to Plaintiffs, and no adequate remedy at law exists that can prevent the harm. Plaintiffs assert that the administrative process cannot occur quickly enough to avoid the harm to Plaintiffs and their residents. Plaintiffs further contend that Defendants will not suffer meaningful harm from a TRO, as Defendants must reimburse claims for care provided to the residents who receive Medicaid and Medicare, regardless of where the residents reside.

Plaintiffs further contend that they have a substantial likelihood of success on the merits of their underlying appeals. According to Plaintiffs, they can show that they addressed and resolved the immediate jeopardizes cited by Defendant DHR during the May 23, 2007, by the time of the June 14, 2007, re-visit. Plaintiffs argue that the affidavits of Dr. Burke and Ms. Reeves demonstrate that Plaintiff Mount Berry has addressed the weight loss concerns and the nutritional concerns. Plaintiffs also state that they intend to present evidence of extensive repairs made to Plaintiff Mount Berry's building to resolve the improper sanitation techniques cited by Defendant DHR. Plaintiffs further allege that they intend to present documentation showing training of staff members concerning existing and newly-developed policies and procedures that address proper patient care, maintenance, and housekeeping responsibilities, as well as documentation showing that the financial administration and governance of the facilities has been restructured and transferred into the exclusive control of Joy

Roberts, an experienced and licensed nursing home administrator. Plaintiffs also state that they plan to dispute other deficiencies alleged by Defendant DHR, including deficiencies that Plaintiffs contend they resolved fully by the June 14, 2007, re-visit.

Plaintiffs also contend that an injunction will serve the public interest by ensuring that the Medicare program is administered according to the law. Plaintiffs argue that forcing the residents of Plaintiffs Mount Berry and Moran Lake to relocate will burden the residents and their families, and that the residents have not suffered harm and are not in immediate danger of suffering harm.

## B. Jurisdiction

### 1. Federal Question Jurisdiction

■ Plaintiffs invoke the Court's federal question jurisdiction under 28 U.S.C.A. § 1331. Plaintiffs, however, fail to identify any federal statute or regulation that Defendants allegedly have violated, and fail to identify any federal constitutional rights that Plaintiffs contend Defendants have violated.[1]

The United States Court of Appeals for the Eleventh Circuit has observed:

There are at least three different types of injunctions a federal court may issue. The first is a "traditional" injunction, which may be issued as either an interim or permanent remedy for certain breaches of common law, statutory, or constitutional rights. Granting such injunctions fall[s] within the long-recognized, inherent equitable powers of the court.

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir.2004) (citation omitted; footnote omitted). According to the Eleventh Circuit:

[A]ny motion or suit for a traditional injunction must be predicated upon a cause of action, such as nuisance, trespass, the First Amendment, etc., regarding which a plaintiff must show a likelihood of success on the merits. There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6) (failure to state a claim).

Considering the issue from another perspective, a traditional injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise. Of course, even if his common law, statutory, or constitutional rights have been violated, the plaintiff also must meet the other requirements for obtaining an injunction to show that an injunction is the proper remedy for such violation.

*Id.* at 1097–98 (citation omitted).

Here, Plaintiffs have failed to identify *any* cause of action or independent legal right that Plaintiffs contend Defendants have violated. Plaintiffs simply seek an injunction, and their request for an injunction is the sole cause of action alleged in their complaint. Given the Eleventh Circuit's discussion in *Klay*, Plaintiffs have not adequately supported a claim for a traditional injunction. Consequently, the Court lacks jurisdiction to address Plaintiffs' claim for an injunction.

---

**1.** In any event, an action challenging a Medicaid or Medicare determination may not be brought under 28 U.S.C.A. § 1331. 42 U.S.C.A. § 405(h); 42 U.S.C.A. § 1395ii; 42 C.F.R. § 498.3(a)(2)(I); 42 C.F.R. § 498.4.

The other types of injunctions that theoretically are available to Plaintiffs are a statutory injunction and an injunction under the All Writs Act. "A statutory injunction is available where a statute bars certain conduct or establishes certain rights, then specifies that a court may grant an injunction to enforce the statute." *Klay*, 376 F.3d at 1098. The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C.A. § 1651(a). Plaintiffs do not appear to invoke either the All Writs Act or a federal statute providing for an injunction.[2]

Finally, to the extent that Plaintiffs may assert that Federal Rule of Civil Procedure 65 provides the basis for federal question jurisdiction, this assertion fails. "A federal rule cannot be the basis of original jurisdiction." *Milan Express, Inc. v. Averitt Express, Inc.*, 208 F.3d 975, 979 (11th Cir.2000).

For the above reasons, Plaintiffs have failed to allege jurisdiction sufficiently. Based on this failure, the Court dismisses Plaintiffs' Complaint and Motion for Temporary Restraining Order without prejudice.

## 2. Administrative Remedies

Plaintiffs appear to challenge Defendants' decisions under the Medicaid and Medicare Acts. The Medicare Act, established pursuant to Title XVIII of the Social Security Act, 42 U.S.C.A. § 1395 *et seq.*, is a federal program designed to provide health insurance for aged and disabled persons. 42 U.S.C.A. §§ 1395c,

1395d. The Medicaid Act, established pursuant to Title XIX of the Social Security Act, 42 U.S.C.A. § 1396 *et seq.*, is a joint program funded by both the federal and state governments designed to provide medical assistance to certain persons in need. The Medicaid Act is administered by the individual states that choose to participate in the program. If a state participates in the program, the state must comply with the requirements of the Medicaid Act and its implementing regulations. 42 U.S.C.A. § 1396a; 42 C.F.R. § 430. All fifty states have chosen to participate in the Medicaid program.

The Medicare and Medicaid programs both authorize the payment of federal funds to reimburse nursing facilities for certain services provided to their residents. To qualify for reimbursement, a facility must be certified to participate in the programs. To be certified under the Medicare program, a facility must comply with various requirements set forth at 42 U.S.C.A. § 1396r(b)-(d), and the federal regulations found in 42 C.F.R. § 483.1, *et seq.* To be certified to participate in the Medicaid program, a facility must comply with various requirements set forth at 42 U.S.C.A. § 1396r(b)-(d) and the federal regulations found in 42 C.F.R. § 442.1, *et seq.*

The Court is not authorized to address claims asserted against the United States, the Secretary of Health and Human Services, or their officers and employees, that arise under the Medicare Act until after the conclusion of an administrative review process. 42 U.S.C.A. § 1395cc(h) (referencing 42 U.S.C.A. § 405(g), which permits judicial review of social security claims

---

**2.** In any event, the All Writs Act, by itself, does not create substantive federal jurisdiction. *Klay*, 376 F.3d at 1098; *Henson v. Ciba–Geigy Corp.*, 261 F.3d 1065, 1070 (11th Cir.2001) (per curiam) (noting that All Writs Act "does not provide an independent basis of federal subject-matter jurisdiction, a plaintiff cannot sue invoking only the Court's All Writs power").

only following administrative hearing and final decision by Secretary of Health and Human Services, and providing that § 405(g) applies in actions brought under Medicare). The appeals procedures set forth for reviewing the Secretary of Health and Human Service's determinations affecting participation in the Medicare program also apply to the Secretary's determination to terminate a facility's Medicaid provider agreement. 42 C.F.R. § 498.3(a)(2)(i); 42 C.F.R. § 498.4. If a facility challenges a determination that it is not in substantial compliance with the common Medicaid and Medicare regulations and a termination of its participation in both programs, the facility must seek review of the termination through the Medicare administrative appeals process. *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 366 (6th Cir.2000).

■ A health care provider challenging a decision under the Medicaid or Medicare Act must exhaust its administrative remedies prior to filing a lawsuit in federal district court. Indeed, the federal district court has no jurisdiction to review a decision pertaining to payment or reimbursement under the Medicaid or Medicare Acts until the provider exhausts its administrative remedies. *Heckler v. Ringer*, 466 U.S. 602, 614–619, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *V.N.A. of Greater Tift County, Inc. v. Heckler*, 711 F.2d 1020, 1024 (11th Cir.1983). Consequently, the Court ordinarily would lack jurisdiction to entertain Plaintiffs' suit.

■ Plaintiffs assert that the Court may entertain this lawsuit because Plaintiffs' claims are "completely collateral" to the matters at issue in the administrative proceedings—whether Defendants may terminate their provider agreements with Plaintiffs. For the following reasons, this argument fails.

An exception to the exhaustion requirement applies where a provider raises a claim that is wholly collateral to a claim for benefits under the Medicaid or Medicare Acts.[3] This exception does not apply here, however, because Plaintiffs' claim is "essentially one requesting the payment of benefits." *Ringer*, 466 U.S. at 621, 104 S.Ct. 2013. Indeed, Plaintiffs have requested a temporary restraining order requiring Defendants to continue paying benefits to Plaintiffs. A favorable resolution of Plaintiffs' claim in this case would result in requiring Defendants to continue paying Plaintiffs under their Medicaid and Medicare agreements. Plaintiffs' claim for a temporary restraining order thus is inextricably intertwined with Plaintiffs' substantive challenge to Defendants' termination decisions. *Cathedral Rock of N. Coll. Hill, Inc.*, 223 F.3d at 362.[4] Consequently, the Court lacks jurisdiction to consider this case, because Plaintiffs have failed to exhaust their administrative remedies. The Court therefore dismisses this case without prejudice.

## C. Summary

In sum, the Court finds that Plaintiffs have failed to plead jurisdiction adequate-

---

**3.** Another exception to the exhaustion requirement applies when the Secretary waives exhaustion. Here, the Secretary has not waived exhaustion.

**4.** Plaintiffs do not argue that the exception set forth in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), applies to this case.

In any event, that exception does not apply because requiring Plaintiffs to seek review through the administrative process first will not altogether deny Plaintiffs the opportunity for judicial review. *Cathedral Rock of N. College Hill, Inc.*, 223 F.3d at 360–61. Once Plaintiffs exhaust their administrative remedies, Plaintiffs can pursue judicial review. *Id.* at 361.

ly. Alternatively, the Court finds that in light of the allegations set forth in Plaintiffs' Complaint, the Court lacks jurisdiction over the case based on Plaintiffs' failure to exhaust their administrative remedies. Those defects are fatal to Plaintiffs' claims. Because the Motion for Temporary Restraining Order presents time-sensitive issues, the Court will dismiss this case without prejudice at this time, rather than dismissing it after holding a hearing on a Motion for Temporary Restraining Order. The Court therefore dismisses Plaintiffs' Complaint and their Motion for Temporary Restraining Order without prejudice.

## IV. Conclusion

ACCORDINGLY, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Complaint [1], and **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for Temporary Restraining Order and for Order to Show Cause for a Preliminary Injunction [5].