**TRADE AROUND THE WORLD OF PA d/b/a Highland Hall Care Center, Plaintiff,**

**v.**

**Donna SHALALA, in her official capacity as Secretary, United States Department of Health and Human Services, Nancy–Ann Min Deparle, in her official capacity as Administrator, Health Care Financing Administration, Charlene M. Brown, in her official capacity as Regional Administrator, Health Care Financing Administration, Region II, Claudette V. Campbell, in her official capacity as Associate Regional Administrator, Medicaid and State Operations, Health Care Financing, Feather Houstoun, in her official capacity as Secretary, Commonwealth of Pennsylvania Department of Public Welfare and Bonnie L. Rose, in her official capacity as Director Commonwealth of Pennsylvania Department Of Public Welfare, Division of Provider Services, Defendant.**

No. CIVA 00–1159.

United States District Court, W.D. Pennsylvania.

Feb. 8, 2001.

Louis J. Capozzi, Jr., Stephen A. Miller, Capozzi & Associates, Harrisburg, PA, for Trade Around the World of PA dba Highland Hall Care Center, plaintiffs.

Laura Schleich Irwin, United States Attorney's Office, Pittsburgh, PA, James C. Newman, John Aloysius Cogan, Jr., Department of Health & Human Services, Office of the General Counsel, Philadelphia, PA, for Donna Shalala, in her official capacity as Secretary. United States Department of Health and Human Services, Nancy–Ann Min Deparle, in her official capacity as Administrator, Health Care Financing Administration, Charlene M. Brown, in her official capacity as Regional Administrator, Health Care Financing Administration. Region III, Claudette V. Campbell, in her official capacity as Associate Regional Administrator, Medicaid and State Operations, Health Care Financing Administration, Region III, Feather Houstoun, in her official capacity as Secretary, Commonwealth of Pennsylvania Department of Public Welfare, Bonnie L. Rose, in her official capacity as Director, Commonwealth of Pennsylvania Department of Public Welfare, Division of Provider Services, defendants.

### *OPINION* and *ORDER OF COURT*

AMBROSE, District Judge.

Pending before the Court are two Motions to Dismiss, the first (Docket No. 18) brought by Feather Houstoun, Secretary, Commonwealth of Pennsylvania Department of Public Welfare ("DPW"), and Bonnie L. Rose, Director, DPW Division of Provider Services. The second Motion to Dismiss (Docket No. 20) is brought by Donna Shalala, Secretary, United States Department of Health and Human Services ("HHS"), Nancy–Ann Min DeParle, Administrator, Health Care Financing Administration ("HCFA"), Charlene M. Brown, HCFA Regional Administrator, and Claudette V. Campbell, HCFA Associ-

ate Regional Administrator. Each of the named Defendants is sued in her official capacity. The Motions to Dismiss are both brought pursuant to Fed.R.Civ.P. 12(b)(1), alleging lack of jurisdiction by this Court, and pursuant to Fed.R.Civ.P. 12(b), alleging that Plaintiff has failed to state a claim for which relief can be granted. For the reasons discussed below, the Motions to Dismiss are granted.

## I. *INTRODUCTION*

### A. *Medicare and Medicaid Organization and Procedures*

Before proceeding to the facts of this case, a brief summary of the government programs involved is necessary, particularly as to how Medicare and Medicaid regulations concerning compliance with health and safety standards for nursing home patients are enforced and how a Medicare/Medicaid provider may appeal decisions of the agencies.

Title XVIII of the Social Security Act establishing the Medicare Program, 42 U.S.C. § 1395 *et seq.,* and Title XIX of the Social Security Act establishing the Medicaid Program, 42 U.S.C. § 1396 *et seq.,* each provides that the federal Department of Health and Human Services is responsible for overall administration of the programs. Medicaid, a joint federal/state program, is administered by the individual states which, in order to participate in the program, must agree to comply with the requirements and standards of the Medicaid Act. 42 U.S.C. § 1396a. Private individuals and organizations such as the Plaintiff contract with HHS and the respective states to provide medical services, including residential skilled nursing care, to the elderly, disabled and/or low-income individuals covered by Medicare and Medicaid.

HHS has delegated implementation of Medicare regulations and compliance with the health and safety standards estab-lished for the skilled nursing facilities to the Health Care Financing Administration. HCFA in turn contracts with agencies in each state to conduct on-site surveys to determine if the providers meet those standards. In Pennsylvania, the Department of Public Welfare is responsible for those surveys. To be certified as a "nursing facility," the organization must comply with the requirements of 42 U.S.C. § 1395i–3(b)–(d) for provision of services under Medicare and 42 U.S.C. § 1396r(b)-(d) for Medicaid services, as well as with the extensive regulations promulgated by the Secretary of HHS. Once a Pennsylvania provider has been initially certified, the DPW conducts periodic re-inspections to assure that those standards are maintained. 42 U.S.C. § 1395i–3(g); 42 U.S.C. § 1396(g). The Medicare and Medicaid standards are nearly identical.

In 1987, as part of the Omnibus Budget Reconciliation Act ("OBRA 87"), Congress amended the Social Security Act to require higher standards of safety, physical and mental care, and rights of residents at nursing homes. Federal Nursing Home Reform Act, Pub.L. No. 110–203, codified at 42 U.S.C. § § 1395i–3 and 1396r. These changes led in turn to more stringent standards for nursing home accreditation and participation. Until the OBRA 87 amendments, only two sanctions were available for nursing homes that failed to meet participation requirements. If the severity of the non-compliance (the so-called "deficiency") posed "immediate jeopardy" to the well-being of the residents, the Secretary of Health and Human Services or the State could decertify the facility and terminate its eligibility to receive Medicaid reimbursements. If, on the other hand, the deficiency did not pose an immediate and serious threat to the patients' health and safety, HHS or the State could deny payment for new admissions

for up to eleven months. *Brogdon v. National Healthcare Corp.*, 103 F.Supp.2d 1322, 1327 (N.D.Ga.2000). However, the OBRA 87 amendments not only imposed unscheduled "standard surveys" and "extended surveys" that determined if the facility met specific standards, they also provided a number of new sanctions to encourage compliance. These so-called "remedies" included denial of payments, civil monetary penalties for each day of non-compliance, appointment of temporary management, and under Medicaid, closure of the facility and transfer of residents to other facilities. *Brogdon, id., citing* 42 U.S.C. § § 1395i–3(h)(2)(B) and 1396r(h)(2)(A), (h)(3).

If a sanctioned provider wishes to challenge any of these remedies, he is required to follow a series of appeal procedures. The Medicare Act incorporates by reference the same procedures for appealing Medicare decisions as apply to other claims brought under the Social Security Act. 42 U.S.C. § 1395ll. Briefly summarized, this process consists of a reconsideration by the organization which made the initial determination, followed by an evidentiary hearing before an administrative law judge, then appeal of that decision to the Appeals Council. *Ardary v. Aetna Health Plans*, 98 F.3d 496, 498 n. 6 (9th Cir.1996), *citing* 42 U.S.C. § 405(b). Once the Secretary renders a "final decision," the provider has the right of judicial review, the procedures for which are codified in 42 U.S.C. § § 405(g) and (h) and provide in part:

(g) **Judicial review.** Any individual, after any final decision of the Secretary [of Health and Human Services] made after a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business.

(h) **Finality of Secretary's decision.** The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 [28 U.S.C. § 1331 or 1346], to recover on any claim arising under this subchapter [42 U.S.C. §§ 401 *et seq.*].

The appeals process applies not only to individuals who, for instance, have been denied Medicare or Medicaid benefits, but also dissatisfied institutions or agencies whose provider agreements have been terminated or not renewed.[1] 42 U.S.C. § 1395cc(h)(1).

B. *Factual History* [2]

Plaintiff Trade Around the World of PA, a Pennsylvania for-profit corporation, op-

---

1. "[A]n institution or agency dissatisfied with a determination by the Secretary that it is not a provider of services or with a determination described in subsection (b)(2) of this section [i.e., termination or non-renewal of a provider agreement] shall be entitled to a hearing thereon by the Secretary (after reasonable notice) to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title." 42 U.S.C. § 1395cc(h)(1).

2. Unless otherwise noted, the facts in this section are taken from the Complaint and the exhibits thereto.

erates two skilled nursing facilities in New Castle and Aliquippa, Pennsylvania. At these facilities, Plaintiff provides long-term care to elderly, infirm and mentally disabled residents, nearly all of whom receive Medicare and/or Medicaid support. Between November 15, 1999, and May 3, 2000, Plaintiff's facility in New Castle, Highland Hall Care Center ("Highland Hall"), underwent nine separate surveys by the Pennsylvania Department of Health ("DOH"), which acts as the Commonwealth's Medicare and Medicaid survey agency on behalf of the DPW. Each survey resulted in citations for various deficiencies by Highland Hall for failing to meet Medicare and Medicaid program participation requirements. The cumulative effect of these deficiencies was a recommendation by the DOH to HFCA that Plaintiff's participation in the Medicare and Medicaid programs be terminated.

HCFA advised Plaintiff that its Medicare and Medicaid provider agreements with Highland Hall would be terminated as of May 15, 2000, and that payment under each program would cease as of June 14, 2000. Plaintiff asserts that contrary to the conclusions by HCFA and DPW that Plaintiff failed to achieve "substantial compliance" within the six-month period, a survey conducted by DOH on December 15, 1999, found that the most severe problem at Highland Hall resulted in a "B" rating, one which indicates substantial compliance with program participation requirements. Thus, termination of the provider agreement was erroneous because the facility had in fact achieved substantial compliance within the required time period.

Plaintiff further asserts that under 42 U.S.C. § 1395i–3(h)—the section which describes enforcement processes—before Highland Hall's provider agreements can be terminated, the deficiencies must "ei-

ther pose an immediate and serious threat to the health or safety of [the] residents or ... immediately jeopardize [their] health or safety." (Complaint, ¶ 24.) Similarly, Plaintiff asserts, 42 U.S.C. § 1396r(h) requires that Medicaid agreements cannot be terminated until deficiencies rise to the same level of "immediate and serious threat" or "immediate jeopardy" to the health or safety of the residents at the facility. Plaintiff argues that because neither HCFA, DPW nor DOH ever found that the deficiencies rose to these levels and because following a survey conducted on June 8–9, 2000, Highland Hall is now in full compliance with all conditions of participation in the Medicare/Medicaid programs, termination of Plaintiff's provider agreements unconstitutionally exceeded Defendants' authority established by the Social Security Act.

### C. *Procedural History*

After Plaintiff received the termination letters from HCFA, it requested on June 7, 2000, an expedited administrative hearing to appeal the termination decisions and "to challenge the Agencies' authority to terminate Highland Hall's Medicare and Medicaid provider agreements prior to a hearing without a finding of immediate jeopardy to Highland Hall's residents." (Complaint, ¶ 34.)

On June 12, Plaintiff filed suit in this court, seeking preliminary and permanent injunctive relief, alleging irreparable harm if Defendants were not enjoined from enforcing the termination before a decision was made regarding Defendants' authority to impose such a sanction. Plaintiff claimed irreparable physical and mental harm to the Highland Hall residents, many of whom are mentally disabled, because Plaintiff would be forced to immediately begin relocating them to other long-term care facilities. A second form of irrepara-

ble harm would result to Plaintiff directly because, under the terms of a financing agreement for the Aliquippa facility, termination of Plaintiff's Medicare and Medicaid provider agreements at either location constitutes a default of the agreement and allows the lender to foreclose on the mortgage. Therefore, Plaintiff argued, an injunction was necessary to allow Highland Hall to remain open, prevent transfer trauma caused by unnecessary removal of the residents, and prevent the economic harm to Plaintiff that would result from default on the financing agreement. Plaintiff asserts that even though it has requested the administrative hearing on an expedited basis, any administrative remedy would be inadequate because by the time such a hearing is held, the facility will have no patients and/or will have ceased to exist as a going concern because of the mortgage foreclosure.

Simultaneously with filing the Complaint, Plaintiff filed a Motion for a Temporary Restraining Order and Preliminary Injunction, based on the same arguments as immediately above. (Docket No. 2.) A hearing was held on June 14, 2000, at which I concluded that I did not have jurisdiction to hear this matter or grant a temporary restraining order while administrative remedies were being exhausted. (Docket No. 8.)

On August 4, 2000, Defendants Houstoun and Rose filed a Motion to Dismiss (Docket No. 18), arguing that under Fed. R.Civ.P. 12(b)(1), this Court lacks subject matter jurisdiction because Plaintiff has not yet exhausted its administrative appeal of the termination currently pending before the United States Department Appeals Board. Alternatively, Houstoun and Rose argued, the Complaint should be dismissed because it fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). A similar Motion (Dock-

et No. 20) was filed by Shalala and the HCFA Defendants, citing the same grounds for dismissal.

### C. Standard of Review for a Rule 12(b)(1) Motion to Dismiss

■ A motion to dismiss under Fed. R.Civ.P. 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's suit, that is, "it attacks ... the right of a plaintiff to be heard in Federal court." *Cohen v. Kurtzman*, 45 F.Supp.2d 423, 428 (D.N.J.1999). A Rule 12(b)(1) attack may argue that the plaintiff's federal claim is immaterial and made solely for the purpose of obtaining federal jurisdiction, is insubstantial and frivolous or, alternatively, the attack may be directed at "the existence of subject matter jurisdiction in fact." *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). In a Rule 12(b)(1) motion based on the existence of jurisdiction, no presumption of truthfulness attaches to the allegations of the plaintiff (in contrast to the presumption applied under a Rule 12(b)(6) motion or a Rule 12(b)(1) motion based on immateriality, etc.) *Mortensen, id.* The plaintiff bears the burden of persuading the court that it has jurisdiction as compared to the burden of the defendant under a Rule 12(b)(6) motion of convincing the court that the plaintiff has failed to state a claim. *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). Because the court must determine whether jurisdiction exists before it may proceed to the merits of a case, the court may make factual findings which are decisive to the issue. *Cohen, id.* at 429, *citing Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir.1990). If I determine that this Court does not have subject matter jurisdiction over the case, I must dismiss the

action. *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir.1997).

Plaintiff asserts the Jurisdiction of this Court pursuant to 42 U .S.C. § 405(g), 28 U.S.C. § § 1331, 1343 and 1346, as well as the Due Process Clause of the United States Constitution. (Complaint, ¶ 9.) Nowhere in the Complaint nor in any of its pleadings does Plaintiff elaborate upon the jurisdiction asserted under 28 U.S.C. § 1343 (Civil Rights and Elective Franchise) or 28 U.S.C. § 1346 (United States as Defendant). Passing references to a point, unaccompanied by substantive argument, do not suffice to bring an issue before the court. *Pennsylvania v. United States Health and Human Services*, 101 F.3d 939, 945 (3d Cir.1996). Consequently, I will not address Plaintiff's claims of jurisdiction under either of these two statutes.

## II. *ANALYSIS*

### A. *Subject Matter Jurisdiction and § § 405(g) and 405(h)*

I conclude that any analysis concerning the extent to which a district court may exercise jurisdiction prior to exhaustion of the Medicare appeals process must now be conducted in light of *Illinois Council for Long Term Care, Inc. v. Shalala*, No. 96 C 2953, 1997 WL 158347, 1997 U.S. Dist. LEXIS 3982 (N.D.Ill. March 31, 1997), *rev'd*, 143 F.3d 1072 (7th Cir.1998), *rev'd*, 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). In *Illinois Council*, plaintiff was an association of nursing homes who argued that the new health and safety standards imposed by OBRA 87 were unconstitutionally vague, violated the Administrative Procedure Act, and violated the Council members' due process rights because the process for reconsideration of a negative evaluation was inadequate. *Illinois Council*, 1997 WL 158347 at *1, 1997 U.S. Dist. LEXIS 3982 at *2–*3. The Council sued HHS and the Illinois Department of Public Health, requesting injunctive and declaratory relief. As in this case, defendants argued that the court did not have subject matter jurisdiction because plaintiff had not satisfied the appeals process prescribed in § 405(g), *Id.*, 1997 WL 158347 at *1–*2, 1997 U.S.Dist.LEXIS 3982 at *3–*4. In response, the Council raised four arguments, two of which are invoked by Plaintiff herein.[3]

The Council argued that its constitutional and statutory challenges could not be brought through the administrative appeals process because the Secretary of HHS is prohibited from hearing appeals concerning the manner and method of the surveys and the choice of remedy. *Illinois Council, id.*, 1997 WL 158347 at *2, 1997 U.S.Dist.LEXIS 3982 at *6, *citing* 42 C.F .R. § 488.408. The court concluded that the language of the regulations did not prevent the appeals board from hearing the plaintiff's challenges to the HHS

---

3. Plaintiff in *Illinois Council* also argued that its claims did not arise under the Medicare Act and thus were not subject to the appeals process. The court concluded that plaintiff's claimed violations of specific Medicare provisions were substantively based on the Medicare Act and therefore barred from judicial consideration by § 405(h). *Illinois Council*, 1997 WL 158347 at *2, 1997 LEXIS 3982 at *5–*6. Plaintiff also argued that because the Medicaid Act does not contain restrictions similar to those in § § 405(g) and 405(h), the court should exercise its jurisdiction over the counts in the complaint raising only Medicaid issues. The court declined to do so, stating that the Medicaid claims were not sufficiently separate and distinct from the Medicare claims, arose from regulations that provide a single set of requirements for both Medicare and Medicaid participants, and would be adequately addressed through the Medicare appeals process. *Id.* 1997 WL 158347 at *3–4, 1997 LEXIS 3982, at *9–*11.

decision and the agency should be given the opportunity to determine if plaintiff's claims could be resolved through the Medicare Act before the constitutional issues were addressed by the court. Furthermore, the court found that the heart of the Council's case was a claim for benefits as evidenced by the fact that plaintiff sought an injunction requiring HHS to continue making Medicare payments to the nursing homes that had been found in non-compliance with the new regulations. *Id.* 1997 WL 158347 at *2, 1997 U.S.Dist.LEXIS 3982 at *7. The court concluded that "plaintiff may not circumvent the Medicare Act by attempting to bring what is essentially a claim for benefits as a facial constitutional challenge." *Id.*

The second argument of *Illinois Council* also raised by Plaintiff in this case was that the § § 405(g) and 405(h) administrative process should not be required because the exception of *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) should apply. The court concluded that the *Michigan Academy* exception to the exhaustion doctrine [4] did not apply because, unlike the plaintiff in that case, the nursing homes had an adequate opportunity for administrative review within HHS and comprehensive judicial review **after** a final decision by the Secretary. *Illinois Council, id.*, 1997 WL 158347 at *2–*3, 1997 U.S.Dist.LEXIS 3982 at *7–*8.

Having rejected each of the arguments raised by the Council, the district court dismissed its case for lack of subject matter jurisdiction. On appeal, the Seventh Circuit reversed, finding that the district court was not barred from considering the Council's claims that the new regulations were improperly imposed because plaintiff was making an anticipatory challenge to their validity under the Constitution and the Administrative Procedure Act, 5 U.S.C. § 533, not the Medicare Act. *Illinois Council on Long Term Care, Inc. v. Shalala*, 143 F.3d 1072, 1078 (7th Cir. 1998). The court held that *Michigan Academy* limited the scope of matters to be reviewed under § 405(h) to "amount determinations" and thus, because the Council's claims addressed a pre-enforcement review of the validity of the regulations—not the amount of benefits payable to the nursing homes or other financial considerations—the district court had jurisdiction to hear those claims. *Id.* at 1074–76. The appeals court remanded the due process objections to the timing and structure of the administrative process under § § 405(g) and 405(h) with orders that those questions be further briefed before the district court.

The Seventh Circuit decision was then appealed to the Supreme Court, which granted *certiorari* (526 U.S. 1063, 119 S.Ct. 1453, 143 L.Ed.2d 540 (1999)) and reversed. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). The Court decided that the district court had correctly determined that it could not hear the case, and concluded that "the statutory provision at issue, § 405(h) ... bars federal-question jurisdiction here. The association or its members must proceed instead through the special review channels that the Medicare statutes create." *Illinois Council*, 529 U.S. at 10, 120 S.Ct. 1084. In

---

**4.** In *Michigan Academy,* the Court looked at an earlier version of the Medicare Act under which certain provisions ("Part B") were not subject to Agency appeal under § 405. Because a plaintiff's dispute with the agency over Part B claims had "no other avenue for judicial review," the Court concluded that those could be brough. to federal court under § 1331 and § 1346. After amendments resolving this inconsistency were enacted by Congress in 1986, this distinction is no longer valid.

rejecting the appeals court's interpretation of *Michigan Academy,* which had relied on the language "to recover on any claim arising under" to limit mandatory review under § 405(h) to amount determinations, the Court agreed that this phrase clearly barred the typical case in which an individual seeks review of a monetary benefit, irrespective of whether that denial was based on "evidentiary, rule-related, statutory, constitutional, or other legal grounds." *Illinois Council, id.* at 18, 120 S.Ct. 1084. However, the Court also concluded that it could not distinguish *Weinberger v. Salfi* and *Heckler v. Ringer*[5] from the *Illinois Council* case, noting that:

> [t]hose cases themselves foreclose distinctions based upon ... the "general legal" versus the "fact-specific" nature of the challenge, the "collateral" versus "non-collateral" nature of the issues, or the "declaratory" versus "injunctive" nature of the relief sought. Nor can we accept a distinction that limits the scope of § 405(h) to claims for monetary benefits. Claims for money, claims for other benefits, claims of program eligibility, and *claims that contest a sanction or remedy* may all similarly rest upon individual fact-related circumstances, may all similarly dispute agency policy determinations, or *may all similarly involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions.* There is no

reason to distinguish among them in terms of the language or in terms of the purposes of § 405(h). Section 1395ii's blanket incorporation of that provision into the Medicare Act as a whole certainly contains no such distinction.

*Illinois Council,* 529 U.S. at 24–25, 120 S.Ct. 1084, emphasis added.

The Court also disagreed with the Seventh Circuit analysis of the scope of *Michigan Academy,* concluding that it was more plausible, more consistent with the holdings of *Salfi* and *Ringer,* and more consistent with the distinction between total preclusion of review and postponement of review "to read *Michigan Academy* as holding that § 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Illinois Council,* 529 U.S. at 34, 120 S.Ct. 1084.

As to the argument that review through the administrative appeals process provided no review at all of the constitutional issues, the Court concluded that the plaintiff would be free, following the prescribed review,

> to contest in court the lawfulness of any regulation or statute upon which an agency determination depends. The fact that the agency might not provide a hearing for that particular contention [e.g., constitutional questions] or may lack the power to provide one is beside

---

5. In *Weinberger v. Salfi,* 422 U.S. 749, 760–762, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), a class action, the Court determined that § 405(h) barred § 1331 Jurisdiction for all members of the class because the Social Security Act—to which the administrative appeals process of § 405(h) also applies—"provided both the standing and the substantive basis for the presentation of the constitutional contentions" of the named plaintiffs, "irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his nondiscretionary ap-

plication of allegedly unconstitutional statutory restrictions." In *Heckler v. Ringer,* 466 U.S. 602, 614, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), the Court held that the sole avenue for judicial review of all claims "arising under" the Medicare Act, i.e., "any claims in which both the standing and the substantive basis for the presentation of the claims is the Medicare Act" is through § 405(g), not 28 U.S.C. § 1331. Thus all aspects of a claim, whether for present or future benefits, must be "channeled" through the administrative process.

the point because it is the "action" arising under the Medicare Act that must be channeled through the agency. After the action has been so channeled, the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide.

*Illinois Council,* 529 U.S. at 41–42, 120 S.Ct. 1084, citations omitted.

### A. *Application of Illinois Council to the Case at Hand*

 Considering the reasoning of the paragraph immediately above, one must conclude that Plaintiff is required by *Illinois Council* to pursue this matter through the administrative appeals process before consideration by this court. If this matter did not "arise under the Medicare Act," Plaintiff would not be concurrently demanding an expedited hearing by the Departmental Appeals Board and indeed, would have no standing to do so. The Court has made very clear that the claim Plaintiff expresses as a statutory or constitutional contention, i.e., that its due process rights were violated by Defendants acting outside their statutory authority, is subject to court review of the agency determination only **after** the action has been channeled through the agency. Plaintiff's reliance on *Rosetti v. Sullivan,* 788 F.Supp. 1380, 1388 (E.D.Pa.1992), which it cites in support of the proposition that exhaustion requirement should be excused because it is presenting a constitutional issue "clearly beyond the Secretary's power to address through the administrative process," is entirely misplaced in the wake of the reference in *Illinois Council* to the court's authority, **following** agency review, "to resolve statutory or constitutional contentions that the agency does not or cannot decide."

Despite the holding of *Illinois Council,* Plaintiff argues that its suit should be heard in this court because it is based on a "collateral issue," that is, Defendants' "authority to terminate participation in the Medicare and Medicaid Programs absent statutorily required findings." (Plaintiff's Brief in Opposition to Defendants Houstoun and Rose's Motion to Dismiss, "Plf.'s Brief," Docket No. 26, at 4.) [6] This issue, it asserts, falls under the holding of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in which the Court allowed a plaintiff to bypass the administrative appeals process and seek immediate judicial review after his Social Security benefits were cut off entirely without a pre-termination hearing. Plaintiff asserts that he meets all the conditions for bringing his complaint directly to this court without first exhausting the administrative appeals process.

In *Eldridge,* the Court established two criteria for judicial review under § 405(g). First, the plaintiff must satisfy a non-waivable requirement that the claim has been presented to the Secretary. *Eldridge,* 424 U.S. at 328, 96 S.Ct. 893. I agree that Plaintiff has met this criterion inasmuch as he filed a request for an administrative hearing on June 7, 2000. (Complaint, Exh. 4.) The second, waivable, element is that the prescribed administrative remedies must have been exhausted. *Eldridge, id.* To determine whether the second element may be waived, a court must consider if (1) the cause of action brought to the court is "entirely collateral" to the issues being pursued through the administrative appeals process and (2) if the harm suffered

---

6. Plaintiff also submitted a brief in opposition to the federal Defendants' Motion to Dismiss, Docket No. 28. These briefs are, for all intents, identical.

by the plaintiff is "irreparable." If both these questions are decided in the plaintiff's favor, it follows that exhaustion would be futile. Plaintiff is therefore permitted to proceed with the judicial claim without waiting until the Secretary has issued a final decision. *Eldridge*, 424 U.S. at 331–332 and n. 11, 96 S.Ct. 893.

To date, no Third Circuit case has addressed the extent to which *Illinois Council* affects the *Eldridge* analysis of "collateral issues" and "irreparable harm." However, a recent Sixth Circuit case, *Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354 (6th Cir.2000), offers a fact pattern remarkably similar to that of this case and addresses this exact issue.

In *Cathedral Rock*, the nursing home plaintiff, Beechknoll, challenged Medicare's decision to terminate its provider agreements after surveys disclosed that Beechknoll was not in substantial compliance with program regulations even though the violations did not rise to the level of immediate jeopardy to the residents. Plaintiff sought declaratory and injunctive relief on the grounds that the termination violated the Medicare Act, the Medicaid Act, the Fifth Amendment Due Process Clause, the Administrative Procedure Act and was contrary to law, arbitrary, capricious and an abuse of discretion by the agencies. *Cathedral Rock* at 357. The district court dismissed the complaint for lack of subject matter jurisdiction inasmuch as plaintiff had not exhausted its administrative remedies.

On appeal, Beechknoll, like Plaintiff here, argued that the right secured by *Eldridge* to immediate judicial review of "entirely collateral" constitutional issues applied to its due process claims. The Sixth Circuit court concluded that the Supreme Court had explained in *Illinois Council* that *Eldridge* did not create an exception to application of § § 405(g) and

405(h), but required the Secretary to excuse some procedural elements, thus more quickly arriving at a "final" administrative decision and opening the door to judicial review under § 405(g). *Cathedral Rock, id.* at 362. The court rejected the analyses of several district court opinions granting immediate judicial review of termination decisions, usually in the form of temporary injunctions preventing interruption of Medicare or Medicaid benefits to the provider. *Cathedral Rock, Id.* at 362–363; *see, also Claridge House, Inc. v. United States Dep't of Health & Human Servs.*, 795 F.Supp. 1393, 1401 (S.D.Ohio 1991); *Mountview Nursing & Rehabilitation Center, Inc. v. United States Dep't of Health & Human Servs.*, Civ. A. No. 1:CV–93–1692, 1993 U.S. Dist. LEXIS 19512, *6 (M.D.Pa. Nov. 17, 1993); *Lake County Rehabilitation Ctr., Inc. v. Shalala*, 854 F.Supp. 1329, 1336 (N.D.Ind.1994); *Libbie Rehabilitation Center, Inc. v. Shalala*, 26 F.Supp.2d 128, 130–31 (D.D.C. 1998); *Northern Health Facilities, Inc. v. United States*, 39 F.Supp.2d 563, 570 (D.Md.1998); *Mediplex of Massachusetts, Inc. v. Shalala*, 39 F.Supp.2d 88, 93 (D.Mass.1999); and *Vencor Nursing Ctrs., L.P. v. Shalala*, 63 F.Supp.2d 1, 5 (D.D.C. 1999). The *Cathedral Rock* court concluded that those courts had misapplied the *Eldridge* analysis. The critical difference which sets *Eldridge* apart from those cases, the court noted, was that in *Eldridge*, unlike the cases cited above, "the individual's constitutional claim regarding his procedural rights involved an analysis of the Supreme Court's jurisprudence on the Due Process Clause, which involved completely separate issues than [sic] his challenge to the Secretary's decision to terminate benefits." *Cathedral Rock, id.*

In its Briefs in Opposition to the Motions to Dismiss, Trade Around the World argues that the question of whether Defen-

dants exceeded their statutory authority in terminating the provider agreements without a finding that residents were facing immediate jeopardy from the health and safety conditions at Highland Hall is "wholly collateral" to the question of whether Plaintiff was in substantial compliance with Medicare/Medicaid regulations, the subject of its administrative appeal. Plaintiff states that "since HHS' actions were beyond its statutory and regulatory authority, HHS violated Highland Hall's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution." (Plf.'s Brief at 7.) As the *Cathedral Rock* court noted, however:

> "A party's characterization of its challenge to the Secretary's termination of a provider agreement as a purely legal or statutory question, however, is not sufficient by itself to constitute an 'entirely collateral' claim.... Rather a court must examine whether the allegedly collateral claim involves completely separate issues from the party's claim that it is entitled to ... continued participation in the Medicare program or whether it is inextricably intertwined with its substantive claim to ... participation."

*Cathedral Rock,* 223 F.3d at 363.

In *Ringer,* the Supreme Court provided a second test[7] for finding that a claim arises under the Medicare Act—and is therefore subject to § § 405(g) and 405(h)—that is, whether it is "inextricably intertwined" with a claim for Medicare benefits. *Ringer,* 466 U.S. at 614–15, 104 S.Ct. 2013. In its pending administrative appeal, Plaintiff seeks an order from the administrative law judge vacating the termination notices because Defendants erred, i.e., acted outside their authority or misapplied Medicare regulations, in termi-

nating the agreements inasmuch as, contrary to Defendants' statements in the notices, Plaintiff had achieved substantial compliance. (Complaint, Exh. 4 at 2.) Through the due process claim it wishes to pursue in this court, Plaintiff seeks a finding that Defendants exceeded their authority in terminating the provider agreements without a finding of immediate jeopardy. In each case, Plaintiff seeks the identical goal of reestablishing the previous benefits of its position as a Medicare/Medicaid provider. These common goals thus distinguish this case from *Eldridge* where the goal of the plaintiff's constitutional claim was a due process hearing before benefits were terminated, while the goal of the appeals process itself was reinstatement of the benefits. I conclude that a favorable resolution of Plaintiff's claim here would result in continued participation in the Medicare/Medicaid program, the same resolution it seeks in the administrative appeal; therefore, the due process claim cannot be considered entirely collateral even though the grounds on which Plaintiff bases the two claims may differ. *See, Cathedral Rock,* 223 F.3d at 354.

This holding is also consistent with a Third Circuit case which arose prior to *Illinois Council* and *Cathedral Rock,* that is, *St. Francis Medical Center v. Shalala,* 32 F.3d 805 (3d Cir.1994), *cert. denied,* 514 U.S. 1016, 115 S.Ct. 1357, 131 L.Ed.2d 215 (1995). In *St. Francis,* the court examined *Salfi* and *Ringer* in detail and concluded that:

> It would, of course, be fruitless to contend that the [plaintiffs'] claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint. But it is just as fruitless to argue that this action

---

7. See footnote 5 for the first test, based on claims in which standing and the substantive

basis for the claims arise from the Medicare Act.

does not also arise under the Social Security Act.

*St. Francis,* 32 F.3d at 810, quoting *Salfi,* 422 U.S. at 760–761, 95 S.Ct. 2457.

The Third Circuit Court of Appeals went on to point out that it was "inconsequential" that the plaintiffs in *St. Francis* did not seek an actual payment of benefits, because once the court concluded that the decision made by the Social Security Commissioner was outside his authority, "only essentially ministerial details will remain" before the plaintiffs would receive reimbursement. *St. Francis, id.* at 811. I find that conclusion applicable here as well. Although on the face of its complaint, Plaintiff seeks only injunctive and declaratory relief, if I were to grant Plaintiff's recommended relief—reinstatement as a Medicare/Medicaid provider retroactive to May 2000—presumably such a determination would be followed by the "ministerial details" associated with reimbursement of Medicare/Medicaid expenses incurred by Plaintiff since that time. *See,* also, *NMC Homecare, Inc. v. Shalala,* 970 F.Supp. 377, 387 (M.D.Pa.1997), noting that the judicial remedy sought by NMC Homecare, an invalidation of adverse determinations by Medicare with respect to reimbursement for certain medical procedures, was "substantially similar, if not identical, to what it would obtain by pursuing its administrative remedies."

██ Unlike the plaintiff in *Cathedral Rock* who apparently argued vigorously that it should have had a hearing before its provider agreements were terminated, Trade Around the World makes only a passing reference to a pre-termination hearing. (Complaint, ¶ 34.) Even if that argument were more fully developed, numerous courts, including those of the Third Circuit, have concluded that a Medicare provider is not entitled to a hearing before termination. *See,* e .g., *Ritter v. Cohen,* 797 F.2d 119, 124–125 (3d Cir.1986), concluding that a physician faced with suspension of his Medicaid provider agreement is not entitled to a pre-termination hearing under *Eldridge; Northlake Community Hospital v. United States,* 654 F.2d 1234, 1242–1243 (7th Cir.1981), reaching the same conclusion as to Medicare providers; *Varandani v. Bowen,* 824 F.2d 307, 310–11 (4th Cir.1987), *cert. dismissed,* 484 U.S. 1052, 108 S.Ct. 1000, 98 L.Ed.2d 968 (1988), same; *Town Court Nursing Center, Inc. v. Beal,* 586 F.2d 266, 277 (3d Cir.1978), *rev'd on other grounds sub nom. O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), holding that a nursing home participating in the Medicare/Medicaid program is not entitled to a pre-termination hearing; *Geriatrics, Inc. v. Harris,* 640 F.2d 262, 265 (10th Cir.1981), *cert. denied,* 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981), same.

Plaintiff has devoted much effort to an explanation of the irreparable harm that will befall the residents of Highland Hall and itself if it is forced to pursue its dispute through the Medicare administrative review process. But because I conclude that Plaintiff has failed to show that its claim is "entirely collateral" to the matters now under consideration by the Departmental Appeals Board, the showing of irreparable harm, standing alone, cannot qualify this complaint for judicial review prior to exhaustion of the administrative appeals process.

Furthermore, having concluded that this Court does not have subject matter jurisdiction, it would be inappropriate for me to consider Defendants' Motions to Dismiss based on failure to state a claim under Fed.R.Civ.P. 12(b)(6).